**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

U.  DEC 1 2 2007
C.S.D.C.
CASH____

------------------------------------------------------------------------- X

PHYSICIANS MUTUAL INSURANCE COMPANY and )
PHYSICIANS LIFE INSURANCE COMPANY, )

                         Plaintiffs, )

       v. )

GREYSTONE SERVICING CORPORATION, INC., )
GREYSTONE FUNDING CORPORATION, )
GREYSTONE & CO., INC., STEPHEN ROSENBERG, )
ROBERT R. BAROLAK, and CURTIS A. POLLOCK, )

                         Defendants. )

------------------------------------------------------------------------- X

**CIVIL ACTION**
**NO. 07 CV 10490 (NRB)**

**COMPLAINT AND**
**JURY DEMAND**
(Removed from the Supreme
Court of the State of New
York County, New York,
Index No. 602918/07)

       Plaintiffs, Physicians Mutual Insurance Company ("Physicians Mutual") and Physicians Life Insurance Company ("Physicians Life") (collectively referred to as "Physicians") for their Complaint against Defendants Greystone Servicing Corporation, Inc., Greystone Funding Corporation and Greystone & Co., Inc. and individual Defendants Stephen Rosenberg ("Rosenberg"), Robert R. Barolak ("Barolak") and Curtis A. Pollock ("Pollock") (collectively referred to as the "Individual Defendants") state and allege as follows:

## PARTIES

       1.      At all relevant times, Physicians Mutual was and is a mutual insurance company organized and existing by virtue of the laws of the State of Nebraska with its principal place of business located in Omaha, Nebraska. Physicians Mutual is a citizen of the State of Nebraska and no other state.

       2.      At all relevant times, Physicians Life was and is an insurance company organized and existing by virtue of the laws of the State of Nebraska with its principal place of business located in Omaha, Nebraska. Physicians Life is a citizen of the State of Nebraska and no other state. Physicians Life is a wholly owned subsidiary of Physicians Mutual.

3.    Greystone Servicing Corporation, Inc. ("GSC") is a corporation organized and existing by virtue of the laws of the State of Georgia with its principal place of business located in Warrenton, Virginia. GSC is registered to do business and does business in the State of New York. GSC is in the business of mortgage lending and banking. Among other things, GSC provides loan servicing and asset management services for large portfolios of real estate loans including multi-family mortgages for private investors and others, which include such functions as collecting mortgage payments and remitting them to the proper parties.

4.    Greystone Funding Corporation ("GFC") is a corporation organized and existing by virtue of the laws of the Commonwealth of Virginia with its principal place of business located in Warrenton, Virginia. GFC does business in the State of New York. GFC is in the business of making investments in debt instruments. GFC acquires and holds debt instruments, primarily mortgage loans.

5.    Greystone & Co., Inc. ("Greystone & Co.") is a corporation organized and existing by virtue of the laws of the State of New York with its principal place of business located in New York, New York. Greystone is a financial services and private investment company.

6.    At all relevant times, on information and belief, GFC, GSC and Greystone & Co. were affiliated companies and shared common ownership, directors, managers and employees, and GFC, GSC and Greystone & Co. were the agents, servants, aiders and abettors, co-conspirators and/or alter egos of each other. GFC, GSC and Greystone & Co. will hereinafter be individually and collectively referred to as "Greystone."

7.    Upon information and belief, Rosenberg is a citizen of either the State of New York or Connecticut. At all times relevant herein, Rosenberg was the President and Chief Executive Officer of Greystone.

2

8.   Barolak is a citizen of the State of Connecticut.  At all relevant times, Barolak was the Co-Chief Operating Officer of Greystone.

9.   Upon information and belief, Pollock is a citizen of the State of New York.  At all relevant times, Pollock was the Co-Chief Operating Officer of Greystone.

10.   Upon information and belief, the Individual Defendants at all relevant times, individually and collectively, directed, managed and controlled the affairs of Greystone.  Upon information and belief, the Individual Defendants were, at all relevant times, the agents, servants, partners, aider and abettor, co-conspirator and/or alter ego of each other and Greystone.

11.   Upon information and belief, Defendants were at all relevant times operating and acting with the purpose and scope of said agency, service, employment, partnership and/or conspiracy and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct was wrongful and/or constituted a breach of duty.

## JURISDICTION AND VENUE

12.   This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1332 and 1441.  This Court has personal jurisdiction over the Defendants pursuant to §§ 301 and 302 of the New York Civil Practice Law and Rules.

13.   Venue is proper in this district pursuant to the provisions of 28 U.S.C. §§ 1391(a), (b) and 1441(a).

## FACTUAL BACKGROUND

14.   Physicians' claims relate to their purchase of loan participation interests in certain pools of federally insured mortgage loans which were prematurely redeemed and wrongfully converted by Defendants.

15.   In approximately 1995 and 1996, Greystone acquired various mortgage loans and pooled them for resale to investors.  Among the loan pools created were three separate loan pools

known as Greystone 1995-4, 1996-1, and 1996-6 (hereinafter collectively referred to as the "Loan Pools"). The Loan Pools consisted of the following loans all of which had 40-year terms and interest rates substantially above the then existing market rate and are further described as follows:

Greystone 1995-4

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 9/27/95 | Interest Rate |
|---|---|---|---|---|
| Aldus Phase I | 3/1/2024 | $5,240,600.00 | $5,144,470.51 | 13.25% |
| Malcolm X II Phase A | 5/1/2024 | $4,938,600.00 | $4,852,535.39 | 13.25% |
| Mid Bronx Phase II | 3/1/2024 | $8,833,500.00 | $8,671,467.56 | 13.25% |
| Paul Robeson Apts | 6/1/2024 | $4,603,000.00 | $4,522,074.71 | 13.25% |
| Sebco IV Apts | 2/1/2024 | $4,077,600.00 | $4,001,743.86 | 13.25% |
| Southern Blvd Apts | 2/1/2024 | $4,999,200.00 | $7,906,201.80 | 13.25% |
| Woodycrest Apts | 4/1/2024 | $6,531,800.00 | $6,413,663.14 | 13.25% |

Greystone 1996-1

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 2/1/96 | Interest Rate |
|---|---|---|---|---|
| Sebco I | 10/1/2011 | $6,099,700.00 | $4,499,705.25 | 9.00% |
| Sebco II | 4/1/2018 | $5,628,400.00 | $4,508,894.21 | 9.00% |

Greystone 1996-6

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 11/26/96 | Interest Rate |
|---|---|---|---|---|
| Macombs Village I | 5/1/2024 | $10,075,600.00 | $9,857,420.69 | 13.25% |
| Fairmont Place | 6/1/2024 | $1,586,400.00 | $1,552,511.63 | 13.25% |

4

16.    The underlying mortgage loans within each of the Loan Pools were insured by the Federal Housing Administration ("FHA") pursuant to the National Housing Act and were for the purpose of financing construction of multi-family, low income housing projects under Section 8 of HUD's housing assistance program.  All of the housing projects are located in and/or near New York, New York.

17.    One of the primary risks to an investor in any mortgage-related instrument is that borrowers on the underlying mortgage loan may refinance or prepay resulting in an early return to the investor of the remaining principal amount (or par value) of the loan and an abrupt end of coupon interest.  This "prepayment risk" is particularly acute for loan participations purchased at premium prices because investors suffer a loss of the premium paid, which can no longer be offset by the above-market coupon interest rate.  Additionally, if interest rates have declined, the investor is forced to reinvest his funds at a lower interest rate than was available at the time of the original investment.  To avoid these losses and to increase the value of participating interests in such loans, lenders often require a borrower to agree not to prepay the loan for a stated period of time thereby eliminating the risk to investors.  This protection from prepayment is variously described as "call protection," "lock-out protection" or "prepayment protection."  At the time that the participation interests in the Loan Pools were being marketed by Defendants, the prepayment restrictions contained within the underlying mortgage loans had expired or would soon expire.  Thus, under the terms of the mortgage loans, the borrowers had the right to prepay.

18.    In order to enhance Defendants' ability to market loan participation interests in the Loan Pools, Greystone negotiated an "Agreement Not to Prepay" (or similarly titled document) with each borrower in each of the three Loan Pools.  In exchange for a fee, the borrowers each agreed not to prepay their loans prior to maturity without the prior written consent of Greystone.  The Agreements further provided that "[a]ny present or future holder of

5

certificates is an intended third party beneficiary of the covenants of the Mortgagor set forth herein." Thus, investors like Physicians were intended beneficiaries of the borrowers' promise not to prepay. The Agreements were provided to investors and/or their investment advisors by Greystone as evidence of prepayment protection including Asset Allocation and Management Co., LLC ("AAM") acting as investment advisor for Physicians.

19.    In order to induce Physicians and other investors to purchase loan participation interests in the Loan Pools at a price above par value, Greystone represented that the borrowers were contractually prohibited from prepaying prior to the stated maturity on each loan. Specifically, in connection with the sale of participation interests in the 1995-4 Pool, on or about September 27, 1995, Greystone entered into a written Purchase Agreement with AAM acting as investment advisor for Physicians and other investors. Rosenberg executed the Agreement on behalf of Greystone. Within that Purchase Agreement, and in order to induce the purchase of participation interests in the 1995-4 Loan Pool, Greystone represented that "100% of the outstanding principal balance of the Loans are subject to legally valid and binding agreements by the borrowers with respect thereto not to prepay any of the outstanding principal balance thereof prior to its stated maturity." On information and belief, similar Agreements were entered into and similar representations were made by Greystone to AAM in connection with Physicians' investment in each subsequent Loan Pool.

20.    In reliance on the high coupon rate of interest on the underlying loans, the Agreements Not to Prepay, and the representations that prepayment protection existed, Physicians invested in each of the three Loan Pools and paid a substantial premium over and above the par value of each security. In the aggregate, Physicians paid a premium above par value for its interest in the Loan Pools in an amount of $5,241,552. The particulars of

6

Physicians' Loan Participation interests, including date of purchase, par value, coupon rate, purchase price and stated maturity date are as set forth below:

| Purchase Date | Purchaser | Project | Par Value | Coupon Rate | Purchase Price | Stated Maturity |
|---|---|---|---|---|---|---|
| 02/20/1996 | Physicians Mutual | 1995-4 | 4,993,281.50 | 13.25% | 6,983,572.30 | 06/01/2024 |
| 02/28/1996 | Physicians Life | 1996-1 | 2,000,000.00 | 9.00% | 2,291,250.00 | 05/01/2018 |
| 02/28/1996 | Physicians Mutual | 1996-1 | 5,000,000.00 | 9.00% | 5,728,125.00 | 05/01/2018 |
| 11/26/1996 | Physicians Life | 1996-6 | 4,000,000.00 | 13.25% | 5,475,000.00 | 06/01/2024 |
| 11/26/1996 | Physicians Mutual | 1996-6 | 1,000,000.00 | 13.25% | 1,368,750.00 | 06/01/2024 |
| 09/28/2000 | Physicians Mutual | 1995-4 | 2,163,040.79 | 13.25% | 2,551,177.90 | 06/01/2024 |
| **Total** | | | **19,156,322.29** | | **24,397,875.20** | |

21.     Physicians' participation interests represented a direct ownership interest in the underlying mortgage loans and all proceeds and profits therefrom. Physicians' participation interests entitled Physicians to their proportionate share of the principal and interest payments made on the underlying mortgage loans.

22.     Greystone was the mortgagee of record and Servicer for each of the Loan Pools. As Servicer, Greystone was responsible for collecting payments due pursuant to the underlying mortgage notes and remitting the appropriate share to the owners of participation interests. For each of the Loan Pools, Greystone executed a "Pooling and Servicing Agreement" ("Servicing Agreement") which addressed its loan servicing duties and responsibilities. As an owner of participation interests in the Loan Pools, Physicians was a party to the Servicing Agreements and beneficial owner of the mortgage loans within the Loan Pools. Under each Servicing

Agreement, Greystone had responsibility "to administer and service the Mortgage Loans in accordance with customary mortgage servicing practices of prudent lending institutions." Each of the Servicing Agreements for the three subject Loan Pools in which Physicians invested were substantially the same and included the following provision:

> **18.    Assignment of the Mortgage Loan**. The Servicer hereby agrees and certifies that during the term of this Agreement, except as provided in this Agreement, **it shall not assign, convey or otherwise transfer the beneficial interest in the Mortgage Loan** (or any portion thereof) and shall not issue any security backed by the Mortgage Loan (including, without limitation, any Project Loan Certificate backed by the Mortgage and guaranteed by the Government National Mortgage Association) **at any time when the Participation Interest shall be outstanding**.

(Emphasis added.)  In related litigation, Barolak testified that this provision of the Servicing Agreements protected holders of participation interests from having the loans sold out from their Pool.

23.    Notwithstanding the terms of the Servicing Agreements, the Defendants orchestrated and implemented a scheme designed to convert for their own benefit the loan participation interests of Physicians and other investors in the high interest rate Loan Pools.  In furtherance of the scheme, Defendants created and/or had documents recorded and/or engaged in fraudulent transactions with third parties to make it appear as if the borrowers had prepaid and/or "refinanced" their mortgage loans for the purpose of concealing Defendants' unlawful redemption and resale of the loan participation interests of Physicians and other investors in the Loan Pools.  In reality, there was never any prepayment or refinancing of the underlying loans by the borrowers.

24.    In related litigation, Barolak testified that he, Rosenberg, and Pollock were each the decision makers behind the "refinancing" transactions.  In furtherance of scheme, the Individual Defendants used the phones and/or directed others to use the phones to call the

individual borrowers to request that they "refinance" their loans. In those phone calls, borrowers were directed to execute and return by fax or mail to Greystone a notice of the borrowers' "intent to refinance."

25.    At the direction of the Defendants, Greystone engaged in "circular" or "straw man" transactions with USGI, Inc. ("USGI"), pursuant to which the underlying mortgage loans in each of the Loan Pools were purportedly sold, assigned and transferred to USGI. In related litigation, Barolak testified that the assignments to USGI were related to the "prepayment" and/or "refinancings" of the underlying loans. However, at no time were the underlying mortgage notes prepaid, satisfied or discharged as would be the case in any refinancing transaction. On the same date that Greystone assigned the loans to USGI, USGI reassigned the loans back to Greystone or, alternatively, issued a Participation Certificate giving Greystone a 100% ownership interest in the Loan.

26.    Notwithstanding the purported "refinancing" of the loans, the borrowers' financial obligation under the mortgage notes, including the above market interest rates, remained unchanged. No economic benefit was realized by any of the underlying borrowers from the purported "refinancing" transactions. On information and belief, the borrowers continued to make and Greystone continued to receive the monthly payments of principal and interest in accordance with the terms of the mortgage notes. The assignment transactions back and forth between Greystone and USGI were nothing more than a pretext so that Defendants could unlawfully redeem, acquire and/or sell the loan participation interests of Physicians and other investors in the Loan Pools.

27.    Once Greystone acquired the loan participation interests in the Loan Pools, it was able to resell them at a substantial premium over and above par value. For example, on or about May 1, 2003, Greystone resold the loan participation interests of Physicians and other investors

in the 1995-4 Loan Pool to Jet Premier Investments, LLC.  On information and belief, Greystone similarly resold loan participation interests of Physicians and other investors in the 1996-1 and 1996-6 Loan Pools at a substantial premium above par and/or held said loan participation interests for their own accounts.

28.    As a result of and pursuant to the unlawful scheme, Physicians' participation interests in the Loan Pools were redeemed or "called" on the following dates:

| | |
|---|---|
| Greystone 1996-1 | September 25, 2002 |
| Greystone 1995-4 | May 27, 2003 |
| Greystone 1996-6 | May 27, 2003 |

In connection with each redemption, and on or about the call dates identified above, Greystone delivered a remittance statement to each holder of a loan participation interest.  Within each remittance statement, Greystone falsely represented that the loans had "paid off" and advised of the aggregate amount of "prepayment principal" received by Greystone.  On each remittance statement, Greystone concealed the true facts concerning the redemptions, including that the underlying borrowers had not prepaid the mortgage loans.  At all time subsequent to the redemptions, Greystone has continued to conceal that the borrowers had never prepaid the mortgage loans and continued to make the monthly payments in accordance with the terms of the mortgage loans.

29.    At or about the time of the redemptions of Physicians' interests in the Loan Pools, AAM conducted an investigation to determine the reason for the early redemptions.  On behalf of Physicians and other clients who had invested in the Loan Pools, AAM contacted representatives of Defendants to inquire as to the circumstances leading to the redemptions. Defendants falsely represented to AAM that the prepayments occurred because the underlying loans had prepaid in connection with a restructuring of the mortgage loans under HUD's Mark-to-Market Program.  On information and belief, Richard Heyman, a representative of Greystone,

made these representations orally and by email on or about May 16, 2003 to representatives of AAM.

30.    Defendants fraudulently concealed the true nature of the transactions which led to the redemption of Physicians' interests in the Loan Pools such that Physicians was unable and would have been unable to discover the fraud until May 4, 2007 when it took the deposition of Greystone in related litigation.

31.    Because of the early redemptions, Physicians received only the remaining principal balance, or par value, of its interest in each of the underlying loans. Due to and as a result of the unlawful redemptions, Physicians was unable to further recover any of the substantial premium paid by Physicians for the loan participation interests which would and/or should have continued to the stated maturity dates of each loan. In addition, Physicians was forced to reinvest the returned par value at an interest rate substantially lower than the high coupon rates of the underlying loans and has suffered a loss of income which will continue through the maturity dates of each loan. Due to and/or as a result of the unlawful conduct of the Defendants, Physicians suffered economic losses in an amount presently undetermined, but not less than $14,167,327.00.

## COUNT I
### (Breach of Contract – Servicing Agreements)
### (All Defendants)

32.    Physicians incorporates paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.    As a purchaser of participation interests in the Loan Pools, Physicians was a party to the Servicing Agreement for each Loan Pool and beneficial owner of the mortgage loans contained within each Loan Pool.

34. Greystone caused the early redemptions of Physicians' interests in the Loan Pools.

35. The acts, actions, commissions, and/or omissions of Greystone constitute a material breach of the Servicing Agreement for each Loan Pool.

36. As a direct and proximate result of the breach of the Servicing Agreements, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167.327.00

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)
### (All Defendants)

37. Physicians incorporates by reference paragraphs 1 through 36 of the Complaint as if fully set forth herein.

38. Every contract contains an implied obligation of good faith and fair dealing.

39. Greystone was required to carry out its obligations under the Servicing Agreements in good faith.

40. The acts, actions, commissions, and/or omissions of Greystone unfairly and unlawfully deprived Physicians of its interests in the Loan Pools which were the subject of the Servicing Agreements and constitute a breach of the implied covenant of good faith and fair dealing in contracts and their performance at common law.

41. As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing in the Service Agreements, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

**COUNT III**
**(Breach of Fiduciary Duty)**
**(All Defendants)**

42.    Physicians incorporates by reference paragraphs 1 through 41 of the Complaint as if fully set forth herein.

43.    At all relevant times, Physicians reposed complete confidence and trust in Greystone to collect and properly remit payments due under the mortgage notes contained within each Loan Pool and otherwise protect the loan participation interests and rights of the certificate owners in each of the Loan Pools.   As Servicer, Greystone had fiduciary obligations to Physicians and other owners of loan participation interests which included the duties to exercise good faith, loyalty, honesty, and fairness in its dealings with Physicians in connection with the loan participation interests.

44.    The acts, actions, commissions, and/or omissions of Greystone constitute a breach of its fiduciary duty.

45.    As a direct and proximate result of Greystone's breach of fiduciary duty, Physicians has suffered and is entitled to compensatory damages and Defendants have been correspondingly unjustly enriched in at least the sum of $14,167,327.00.

46.    Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

**COUNT IV**
**(Aiding and Abetting a Breach of Fiduciary Duty)**
**(All Defendants except Greystone Servicing Corp.)**

47.    Physicians incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48.    As Servicer, Greystone Servicing Corporation had fiduciary obligations to Physicians and other owners of loan participation interests which included the duties to exercise

13

good faith, loyalty, honesty, and fairness in its dealing with Physicians in connection with the loan participation interests.

49.    Greystone Funding Corporation, Greystone & Co. and the Individual Defendants, and each of them, knowingly acted in concert with, induced and participated in and/or aided and abetted substantially assisted Greystone Servicing Corporation's breach of fiduciary duty.

50.    As a direct and proximate result of the breach, Physicians has suffered and is entitled to compensatory damages and Defendants have been correspondingly unjustly enriched in at least the sum of $14,167,327.00.

51.    Defendants' actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

**COUNT V**
**(Conversion)**
**(All Defendants)**

52.    Physicians incorporates by reference paragraphs 1 through 51 as if fully set forth herein.

53.    As owner of participation interests in each of the Loan Pools, Physicians was entitled to receive its proportionate share of the monthly proceeds of the Loan Pools.

54.    Through their acts, actions, commissions and/or omissions, Defendants exercised unauthorized control and wrongfully converted Physicians' loan participation interests in each of the Loan Pools to their own benefit.

55.    As a direct and proximate result of Defendants' conversion of Physicians' loan participation interests, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

56.    Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

14

## COUNT VI
### (Fraud)
### (All Defendants)

57.     Physicians incorporates by reference paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58.     In connection with their scheme to unlawfully redeem and convert Physicians' loan participation interests, Defendants misrepresented to Physicians' investment advisor that the loans prepaid in connection with loan restructurings under HUD's Mark-to-Market Program and at all relevant times fraudulently concealed from Physicians and its investment advisor the fact that the borrowers had not prepaid as well as the true nature and purpose of the transactions which led to the early redemption of its loan participation interests in the Loan Pools.

59.     Physicians relied upon and was misled by the acts, actions, commissions and/or omissions of Defendants.

60.     As a direct and proximate result of Defendants' acts, actions, commissions and/or omissions, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

61.     Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

## COUNT VII
### (Constructive Trust)
### (All Defendants)

62.     Physicians incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.     Due to and/or as a result of the unlawful conduct described herein, the loan participation interests of Physicians in the Loan Pools were unlawfully and prematurely redeemed and converted by Defendants. Acting in concert with each other, Defendants were

able to acquire and either resell Physicians' loan participation interests at a substantial profit and/or enjoy the high interest cash flow streams for their own account in contravention of the rights of Physicians.

64.    By virtue of their unlawful conduct, Defendants earned large sums of money, the exact amount of which is unknown to Physicians and which, in equity and good conscience, should be impressed with a trust in favor of Physicians.

65.    The funds obtained by Defendants from the loan participation interests should be declared to be and held in trust by Defendants for the benefit of Physicians.

66.    Defendants should be compelled to provide Physicians with a full accounting of all income and/or other proceeds obtained from the loan participation interests aforesaid.

**COUNT VIII**
**(Violation of the Racketeer Influenced and**
**Corrupt Organization Act ("RICO")**
**18 U.S.C. § 1961 *et seq.*)**
**(All Defendants except Greystone Servicing Corporation)**

67.    Physicians incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

68.    GFC, Greystone & Co. and the Individual Defendants (hereinafter collectively referred to as the "RICO Defendants"), and each of them, is a person as that term is defined in the RICO statute.

69.    GSC is a corporation and constitutes an "enterprise" as that term is defined in the RICO statute.

70.    In connection with their scheme to defraud, the RICO Defendants have on repeated occasions knowingly used or caused to be used the United States mail and interstate wires to unlawfully redeem and convert Physicians' loan participation interests in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).

16

71.    The multiple predicate acts of mail and wire fraud, as more particularly described in Exhibit "A" attached hereto, constitute "racketeering activity," as that term is defined in the RICO statute.

72.    The multiple acts of racketeering activity by the RICO Defendants were part of an ongoing common plan or scheme to unlawfully redeem and convert the loan participation interests of Physicians and other investors in the subject Loan Pools as well as other loan pools serviced by GSC. The predicate acts of mail fraud and wire fraud were continuous, systematic and committed over an extended and prolonged period of time. The predicate acts have continuity and relationship to each other, demonstrate a threat of continued unlawful and illegal activity and constitute a "pattern of racketeering activity" as defined in the RICO statute.

73.    The RICO Defendants, directly and indirectly, have conducted and participated in the conduct of the affairs of GSC, through the pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) of the RICO statute.

74.    The RICO Defendants have further conspired and agreed together to conduct or participate in the conduct of the affairs of GSC through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

75.    As a result of the conduct of the RICO Defendants, Physicians has suffered damage to its business or property and is entitled to recover damages in an amount not less than $14,167,327.00, such damages to be trebled pursuant to 18 U.S.C. § 1964(c), plus court costs and reasonable attorney fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** on each Count of their Complaint, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants as follows:

a.     For compensatory, treble and any other damages to the full extent allowed by law; and

b.     For exemplary and punitive damages as permitted by law; and

c.     For an order directing Defendants to account for all proceeds obtained, received, realized and/or recognized from the acquisition and/or resale of Physicians' loan participation interests and further imposing a constructive trust on said funds in favor of Physicians; and

d.     For attorneys fees, costs and other expenses as permitted by law; and

e.     For the costs of this action; and

f.     For such other and further relief as the Court deems just and proper.


**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL CAUSES.**

**DATED** this 29th day of November 2007; New York, New York.

PHYSICIANS MUTUAL INSURANCE
COMPANY and PHYSICIANS LIFE
INSURANCE COMPANY, Plaintiffs

By:/s/Richard E. Carmen, Esq.
     Richard E. Carmen, Esq. (REC-6906)
     Adria De Landri, Esq. (ADL-5859)
     Brief Carmen & Kleiman, LLP
     805 Third Avenue, 11th Floor
     New York, NY  10022
     (212)758-6160
     (212)832-7221
     rec@briefjustice.com
     adl@briefjustice.com

                              and

18

James J. Frost, Esq. (JJF-4879)
McGrath, North, Mullin & Kratz, PC LLO
Suite 3700, First National Tower
1601 Dodge Street
Omaha, NE  68102
(402) 341-3070
(402) 341-0216 (fax)
jfrost@mcgrathnorth.com

ATTORNEYS FOR THE PLAINTIFFS

EXHIBIT "A"
CIRCULAR TRANSACTIONS

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| *ALL PROPERTIES* | | | | |
| 4/25/2003 | GCS | Krooth & Altman, LLP | Requesting assignments conveying properties from GSC to USCGI and another set from USGI to GSC on 5/1/2003 | Various Email |
| 4/28/2003 | GSC | USGI, Inc. | Sending "Corrected" set of Assignments to convey the property from GSC to USGI and then from USGI back to GSC on 5/1/2003 | Various Email |
| 4/28/2003 | GSC | USGI, Inc. | Message attaching two sets of HUD forms 92080 for each deal from GSC to USGI and from USGI back to GSC [1] | Email |
| *POOL 1995-4* | | | | |
| *ALDUS I* | | | | |
| 4/27/1995 | GFC | Aldus I Associates, et al. | Agreement Not to Prepay Mortgage Loans | Mail |
| 4/27/1994 | GFC | Aldus I Associates | Side Letter detailing additional consideration in return for agreement not to prepay | Mail |
| 4/1/2003 | Samuel Pompa | GSC | Notice of interest in refinancing the existing debt on Aldus I by assignment, not termination | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Aldus I) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 4/29/2003 | GSC | USGI | §275 Certification by GSC that Aldus I transaction is a "refinancing" | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan documents (Aldus I) | Mail |
| 5/1/2003 | GSC | HUD | Notice of Mortgage Record Change (GSC to | Mail |

[1] Plaintiffs do not possess documents comprising all of the HUD forms 92080 attached to the above cited email message but asserts on information and belief that such forms were completed for both sides of each of the deals identified in the email, e.g., Aldus I, Paul Robeson, MBD II, SEBCO IV, Malcolm X, Woodycrest Apartments, Macombs Village and Southern Boulevard.

s:\roc\litig\physiciansmut\ymic v. gsc - exhibit a wo tables.doc

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change (USGI to GSC) USGI) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Aldus I) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Aldus I) | Mail |
| UNDATED | USGI, Inc. | GSC | §275 Certification by USGI of Aldus I transaction as "refinancing" | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Financing Statement | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation & Servicing Agreement; Jet becomes owner of 100% interest in Aldus I | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation Certificate reflecting Jet's 100% ownership interest in Aldus I | Mail |
| 5/27/2003 | Greystone | Ell & Co. | Remittance Advice | Wire |
| **MALCOLM X II** | | | | |
| 12/21/1994 | GFC | Malcolm X II Phase A Associates | Agreement Regarding refinancing of Mortgage Loans – Malcolm X agreed not to exercise its right to prepay | Mail |
| 12/21/1994 | GFC | Center Development Corp. ("CDC") as general partner of Malcolm X II Phase A | Side Agreement by which GFC agreements to pay additional consideration in return for agreement not to prepay. | Mail |
| 2/26/2003 | CDC | GSC | Letter notifying GSC of desire to refinance existing debt on Malcolm X II Phase A through assignment, not termination | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Malcolm X II) | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC that Malcolm X | |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| | | | transaction is "refinancing" | |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of assignment | Mail |
| UNDATED | GSC | NY Dep't of State | UCC Financing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change, showing a "sale" by Malcolm X II of the mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change, indicating there was a "purchase" by USGI of the mortgage for Malcolm X II | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI that Malcolm X II transaction is "refinancing" | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation and Servicing Agreement between GSC and Jet | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation Certificate in Malcolm X II Phase A mortgage | Mail |
| 5/27/2003 | Greystone | Eli & Co. | Remittance Advice | Wire |
| **MDB II ASSOCIATES** | | | | |
| 11/22/1994 | GFC | MDB II Associates, Property Resources Corp. ("PRC") | Agreement Not to Prepay Mortgage Loans | Mail |
| 11/22/1994 | GFC | MDB II Associates, PRC | Side Letter setting out additional consideration Greystone will pay for agreement not to prepay. | Mail |
| 3/18/2003 | PRC | GSC | Letter providing notice of intent to refinance the existing debt on MBD Phase II | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (MBD II) | Mail |

3

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|------|----------------|-----------|----------------|-------------------|
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification that MBD II transaction is a "refinancing" | Mail |
| 5/1/2003 | GSC USGI, Inc. | HUD | Notice of Mortgage Record Change (GSC to USGI) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change (USGI to GSC) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (MBD II Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (MBD II Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI, Inc. selling MBD II Associates mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; GSC selling MBD II mortgage back to USGI, Inc. | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (MBD II Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of MBD II Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation Certificate reflecting 100% ownership in Mid Bronx Phase II | Mail |
| 5/1/2003 | GSC | Jet Premier Investments LLC | Participation and Servicing Agreement between GSC and Jet | Mail |
| 12/1/2002 | PRC | GSC | Letter stating intent to prepay the Mid Bronx | Facsimile |

4

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| | | | Phase II loan | |
| 5/27/2003 | Greystone | Ell & Co. | Remittance Advice | Wire |
| *PAUL ROBESON HOUSES ASSOCIATES* | | | | |
| 11/22/1994 | GFC | Paul Robeson Houses Associates | Agreement Not to Prepay Mortgage Loans | Mail |
| 11/22/1994 | GFC | PRC | Side Letter stating Greystone's additional consideration in return for the agreement not to prepay | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Paul Robeson) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents (Paul Robeson) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Paul Robeson transaction as "refinancing" | Mail |
| 9/25/2003 | GSC | NYC Dept of Finance | Recording of Mortgage Assignment | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; Paul Robeson selling mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; Paul Robeson selling mortgage to USGI, Inc. | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Paul Robeson House Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation Certification in Paul Robeson House Associates | Mail |
| 5/1/2003 | GSC | JET Premier | Participation and Servicing Agreement for | Mail |

5

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 5/27/2003 | Greystone | Investments LLC | ownership in Paul Robeson mortgage | Wire |
| *SEBCO IV ASSOCIATES* | | | | |
| 4/27/1995 | GFC | Eli & Co. | Remittance Advice | Mail |
| | | SEBCO IV Associates, Samuel Pompa | Agreement Not to Prepay Mortgage Loans | Mail |
| 4/27/1995 | GFC | Sam Pompa, SEBCO IV Associates | Side Letter stating GFC's agreement to pay additional consideration in return for the agreement not to prepay mortgage | Mail |
| 3/18/2003 | PRC | GSC | Letter stating notice of intent to refinance the existing debt on SEBCO IV by assignment, not termination | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (SEBCO II) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC that SEBCO IV transaction is a "refinancing" | Mail |
| 7/24/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (SEBCO IV Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (SEBCO IV Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (SEBCO IV Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; GSC selling mortgage to USGI | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI selling mortgage to GSC | Mail |
| 6/23/2003 | Greystone | USGI, Inc. | Forwarding Assignment of Mortgage from USGI to GSC for SEBCO IV Associates | Mail |
| UNDATED | USGI, Inc. | | § 275 Certification by USGI of SEBCO IV | Mail |

6

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 5/27/2003 | Greystone | Eii & Co. | Remittance Advice | Wire |
| *SOUTHERN BOULEVARD* | | | | |
| 12/21/1994 | GFC | Southern Boulevard IV Associates, William T. Okie, Jr., William W. Hubbard | Agreement Regarding Refinancing of Mortgage Loans (agreeing not to prepay mortgage) | Mail |
| 12/21/1994 | GFC | Bill Hubbard, Center Development Corp. ("CDC") | Letter stating GFC agreement to pay additional consideration for agreement not to prepay mortgage | Mail |
| 2/16/2003 | CDC | GFC | Letter stating intent to refinance existing debt on Southern Boulevard Phase IV | Facsimile |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mal |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Southern Boulevard) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement (Southern Boulevard) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Southern Boulevard transaction as "refinancing" | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Financing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Southern Boulevard IV Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Southern Boulevard IV Associates) | Mail |
| 5/1/2003 | USGI, Inc GSC | HUD | Notice of Mortgage Record Change; GSC selling Southern Boulevard IV mortage to USGI | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI selling Southern Boulevard IV mortgage to GSC | Mail |

7

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Southern Boulevard IV Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Southern Boulevard IV Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation Certificate in Southern Boulevard Phase IV | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation and Servicing Agreement Certificate for Southern Boulevard Phase IV | Mail |
| 5/27/2003 | Greystone | Ell & Co. | Remittance Advice | Wire |
| *WOODYCREST COURT ASSOCIATES* | | | | |
| 8/3/1995 | GFC | RM Properties, Inc. | Agreement Not to Prepay Mortgage Loan for Woodycrest Court Associates | Mail |
| 8/3/1995 | GFC | RM Properties, Inc. | Side Letter stating GFC's agreement to pay additional consideration for agreement to not prepay mortgage | Facsimile |
| 3/20/2003 | E&M Associates | GSC | Notice of desire to refinance Woodycrest Court project by assignment, not termination | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Woodycrest transaction as a "refinancing" | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Woodycrest Courts Apartments) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Woodycrest Courts Associates) | Mail |
| 5/1/2003 | USGI, Inc / GSC | HUD | Notice of Mortgage Record Change; GSC selling Woodycrest Court Associates mortgage to USGI | Mail |
| 5/1/2003 | USGI, Inc. | HUD | Notice of Mortgage Record Change; USGI | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| | GSC | | selling Southern Boulevard IV mortgage to GSC | |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Woodcrest Court Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Woodycrest Court Associates transaction as "refinancing" | Mail |
| 5/27/2003 | Greystone | Ell & Co. | Remittance Advice | Wire |
| **POOL 1996-1** | | | | |
| **SEBCO I AND SEBCO II ASSOCIATES** | | | | |
| 7/11/1995 | GSC | SEBCO I Associates | Agreement Not to Prepay Mortgage Loans | Mail |
| 7/11/1995 | GSC | SEBCO II Associates | Agreement Not to Prepay Mortgage Loans | Mail |
| 11/1/1995 | GSC | GFC | Participation Certificate between GSC and GFC; holder of Participation interest | Mail |
| 11/1/1995 | GSC | GFC | Participation and Servicing Agreement between GSC as Servicer and GFC as holder of Participation interest | Mail |
| 7/1/2002 | PRC | GSC | Notice of intent to prepay SEBCO I and II Mortgage Loans | Facsimile |
| 7/29/2002 | PRC | GSC | Letter stating notice of intent to prepay SEBCO I and II Mortgage Loans | Facsimile |
| 8/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage (SEBCO II Associates) to USGI, Inc. | Mail |
| 8/30/2002 | GSC | First National City Bank | Allonge to Mortgage Note by SEBCO II Associates from GSC | Mail |
| 8/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage (SEBCO I Associates) | Mail |
| UNDATED | GSC | USGI, Inc. | § 275 Certification by GSC of SEBCO I Associates transaction as "refinancing" | Mail |
| UNDATED | GSC | USGI, Inc. | § 275 Certification by GSC of SEBCO II Associates transaction as "refinancing" | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Security Agreement to USGI (SEBCO I Associates) | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Security Agreement to USGI | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| | | | (SEBCO II Associates) | |
| 8/30/2002 | GSC | USGI | Assignment of Collateral Loan Documents (SEBCO I Associates) | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Collateral Loan Documents (SEBCO II Associates) | Mail |
| UNDATED | GSC | City Register of Bronx County | UCC Financing Statement Amendment; noting assignment of Financing Statement File 88PX03514 to USGI, Inc. | Mail |
| UNDATED | GSC | City Register of Bronx County | UCC Financing Statement Amendment; noting assignment of Financing Statement File 88PX03515 to USGI, Inc. | Mail |
| UNDATED | GSC | New York Secretary of State | UCC Financing Statement Amendment; noting assignment of Financing Statement File 123321 to USGI, Inc. | Mail |
| UNDATED | GSC | New York Secretary of State | UCC Financing Statement Amendment; noting assignment of Financing Statement File 123322 to USGI, Inc. | Mail |
| 8/30/002 | GSC | NYC Department of Finance, Office of City Registrar | Recording of Mortgage Assignment from GSC to USGI (SEBCO II) | Mail |
| 8/29/2002 | USGI | GSC | Fax attaching GSC signature on execution page of Participation & Servicing Agreement for Sebco I and II | Facsimile |
| 8/29/2002 | USGI | GSC | Fax attaching USGI signature on execution page of Participation & Servicing Agreement for Sebco I and II | Facsimile |
| 9/25/2002 | Greystone | Ell & Co. | Remittance Advice | Wire |
| *POOL 1996-6* | | | | |
| *FAIRMONT PLACE* | | | | |
| 9/15/1995 | GSC | Alpert, Alpert & Sons as General Partner of Fairmont Place Apartments | Agreement of General Partner Related to Certain Provisions of the Mortgage Loan (agreement not to prepay) | Mail |

10

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 12/1/2002 | Alpert &Alpert | Associates GSC | Letter stating desire to refinance debt on Fairmont Place Apartments by assignment not termination | |
| 12/23/2002 | Alpert & Alpert | GSC | Letter stating desire to prepay debt on Fairmont Place Apartments | Facsimile |
| 12/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 12/30/2002 | GSC | USGI, Inc. | § 275 Certification by GSC that Fairmont Place transaction is a "refinancing" | Mail |
| 6/6/2003 | GSC | NYC Department of Finance, Office of City Registrar | Recording of Mortgage Assignment from GSC to USGI (Fairmont Place Apartments Associates) | Mail |
| 1/27/2003 | Greystone | Ell & Co. | Remittance Advice | Wire |
| *MACOMBS VILLAGE ASSOCIATES* | | | | |
| 9/28/1995 | GSC | GFC | Participation Certificate for GFC in Macombs Village | Mail |
| 9/28/1995 | GSC | GFC | Participation and Servicing Agreement for Macombs Village | Mail |
| 12/21/1995 | GFC | Macombs Village Associates | Agreement Not to Prepay Mortgage Loan | Mail |
| 3/20/2003 | Ashton Management Corp. | GSC | Letter stating notice of intent to prepay Macombs Village loan | Facsimile |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by Macombs Village Associates | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 4UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/2/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Macombs Village Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Macombs Village Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Macombs Village Associates transaction as "refinancing" | Mail |
| 5/1/2003 | USGI, Inc GSC | HUD | Notice of Mortgage Record Change; GSC selling Macombs Village Associates mortgage to USGI | Mail |
| 5/1/2003 | USGI, Inc GSC | HUD | Notice of Mortgage Record Change; USGI selling Macombs Village Associates mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Macombs Village Associates) | Mail |
| 5/27/2003 | Greystone | Eli & Co. | Remittance Advice | Wire |

12

## CERTIFICATE OF SERVICE

This certifies the undersigned attorney has caused service of the Complaint and Jury Demand to be made by electronic mail and United States mail, postage prepaid, to the following attorneys representing defendants in this action on this 29th day of November, 2007:

Stephen L. Saxl, Esq.
William A. Wargo, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
saxls@gtlaw.com
wargow@gtlaw.com

José A. Isasi, II, Esq.
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 2500
Chicago, IL 60601
isasij@gtlaw.com

/s/Richard E. Carmen, Esq.
Richard E. Carmen, Esq.