BRIEF CARMEN & KLEIMAN,

RECEIVED
MAR 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PHYSICIANS MUTUAL INSURANCE COMPANY and ) **CIVIL ACTION**
PHYSICIANS LIFE INSURANCE COMPANY, ) **NO. 07 CV 10490 (NRB)**
  )
            Plaintiffs, ) **FIRST AMENDED**
  ) **COMPLAINT AND**
      v. ) **JURY DEMAND**
  ) (Removed from the Supreme
GREYSTONE SERVICING CORPORATION, INC., ) Court of the State of New
GREYSTONE & CO., INC., STEPHEN ROSENBERG, ) York County, New York,
ROBERT R. BAROLAK, and CURTIS A. POLLOCK, ) Index No. 602918/07)
  )
            Defendants. )

---

Plaintiffs, Physicians Mutual Insurance Company ("Physicians Mutual") and Physicians

Life Insurance Company ("Physicians Life") (collectively referred to as "Physicians") for their

Complaint against Defendants Greystone Servicing Corporation, Inc. and Greystone & Co., Inc.

and individual Defendants Stephen Rosenberg ("Rosenberg"), Robert R. Barolak ("Barolak")

and Curtis A. Pollock ("Pollock") (collectively referred to as the "Individual Defendants") state

and allege as follows:

## PARTIES

1.    At all relevant times, Physicians Mutual was and is a mutual insurance company

organized and existing by virtue of the laws of the State of Nebraska with its principal place of

business located in Omaha, Nebraska. Physicians Mutual is a citizen of the State of Nebraska

and no other state.

2.    At all relevant times, Physicians Life was and is an insurance company organized

and existing by virtue of the laws of the State of Nebraska with its principal place of business

located in Omaha, Nebraska. Physicians Life is a citizen of the State of Nebraska and no other

state. Physicians Life is a wholly owned subsidiary of Physicians Mutual.

3.    Greystone Servicing Corporation, Inc. ("GSC") is a corporation organized and existing by virtue of the laws of the State of Georgia with its principal place of business located in Warrenton, Virginia.  GSC is registered to do business and does business in the State of New York.  GSC is in the business of mortgage lending and banking.  Among other things, GSC provides loan servicing and asset management services for large portfolios of real estate loans including multi-family mortgages for private investors and others, which include such functions as collecting mortgage payments and remitting them to the proper parties.

4.    Greystone & Co., Inc ("Greystone & Co.") is a corporation organized and existing by virtue of the laws of the State of New York with its principal place of business located in New York, New York.  Greystone & Co. is a financial services and private investment company. Greystone & Co. provides senior management to and operates the affairs of GSC.

5.    At all relevant times, on information and belief, GSC and Greystone & Co. were affiliated companies and shared common ownership, directors, managers and employees, and GSC and Greystone & Co. were the agents, servants, aiders and abettors, co-conspirators and/or alter egos of each other.  According to Barolak, Greystone & Co. and its affiliates, including GSC, are not "organized in a strict hierarchal level" but instead have a "flat and loose organized structure" over which Rosenberg, Barolak and Pollock have senior management responsibility.

6.    Upon information and belief, Rosenberg is a citizen of either the State of New York or Connecticut.  At all times relevant herein, Rosenberg was the President, Chief Executive Officer, and owner of GSC and Greystone & Co.  Rosenberg, together with Barolak and Pollock, was responsible for managing and had overall responsibility for the affairs of all of the affiliates of Greystone & Co., including GSC.

7.    Barolak is a citizen of the State of Connecticut. At all relevant times, Barolak was the Co-Chief Operating Officer of Greystone & Co. and, in addition to Pollock and Rosenberg, was responsible for managing and had overall responsibility for all of the affiliates of Greystone & Co., including GSC.

8.    Upon information and belief, Pollock is a citizen of the State of New York. At all relevant times, Pollock was the Co-Chief Operating Officer of Greystone & Co. and, in addition to Rosenberg and Barolak, was responsible for managing and had overall responsibility for all of the affiliates of Greystone & Co., including GSC.

9.    The Individual Defendants at all relevant times, individually and collectively, directed, managed and controlled the affairs of GSC and Greystone & Co. and were the decision makers behind the scheme to unlawfully redeem Physicians' loan participation interests. Upon information and belief, the Individual Defendants were, at all relevant times, the agents, servants, partners, aider and abettor, co-conspirator and/or alter ego of each other and GSC and Greystone & Co.

10.    Upon information and belief, Defendants, and each of them, were at all relevant times operating and acting with the purpose and scope of said agency, service, employment, partnership and/or conspiracy and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct was wrongful and/or constituted a breach of duty.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1332 and 1441. This Court has personal jurisdiction over the Defendants pursuant to §§ 301 and 302 of the New York Civil Practice Law and Rules.

12.    Venue is proper in this district pursuant to the provisions of 28 U.S.C. §§ 1391(a), (b) and 1441(a).

## FACTUAL BACKGROUND

13.    Physicians' claims relate to their purchase of loan participation interests in certain pools of federally insured mortgage loans which were unlawfully redeemed and wrongfully converted by Defendants.

**The Loan Pools.**

14.    In approximately 1995 and 1996, Greystone Funding Corporation, an affiliate of Greystone & Co. and GSC acquired various mortgage loans and pooled them for resale to investors. Among the loan pools created were three separate loan pools known as Greystone 1995-4, 1996-1, and 1996-6 (hereinafter collectively referred to as the "Loan Pools"). The Loan Pools consisted of the following loans all of which had 40-year terms and interest rates substantially above the then existing market rate and are further described as follows:.

Greystone 1995-4

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 9/27/95 | Interest Rate |
|---|---|---|---|---|
| Aldus Phase I | 3/1/2024 | $5,240,600.00 | $5,144,470.51 | 13.25% |
| Malcolm X II Phase A | 5/1/2024 | $4,938,600.00 | $4,852,535.39 | 13.25% |
| Mid Bronx Phase II | 3/1/2024 | $8,833,500.00 | $8,671,467.56 | 13.25% |
| Paul Robeson Apts | 6/1/2024 | $4,603,000.00 | $4,522,074.71 | 13.25% |
| Sebco IV Apts | 2/1/2024 | $4,077,600.00 | $4,001,743.86 | 13.25% |
| Southern Blvd Apts | 2/1/2024 | $4,999,200.00 | $7,906,201.80 | 13.25% |
| Woodycrest Apts | 4/1/2024 | $6,531,800.00 | $6,413,663.14 | 13.25% |

Greystone 1996-1

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 2/1/96 | Interest Rate |
|---|---|---|---|---|
| Sebco I | 10/1/2011 | $6,099,700.00 | $4,499,705.25 | 9.00% |
| Sebco II | 4/1/2018 | $5,628,400.00 | $4,508,894.21 | 9.00% |

Greystone 1996-6

| Project | Maturity Date | Original Principal Balance | Loan Balance as Of 11/26/96 | Interest Rate |
|---|---|---|---|---|
| Macombs Village I | 5/1/2024 | $10,075,600.00 | $9,857,420.69 | 13.25% |
| Fairmont Place | 6/1/2024 | $1,586,400.00 | $1,552,511.63 | 13.25% |

15. The underlying mortgage loans within each of the Loan Pools were insured by the Federal Housing Administration ("FHA") pursuant to the National Housing Act and were for the purpose of financing construction of multi-family, low income housing projects under Section 8 of HUD's housing assistance program. All of the housing projects are located in and/or near New York, New York.

**Physicians' Investments in the Loan Pools.**

16. Physicians invested in each of the three Loan Pools and paid a substantial premium over and above the par value of each security. In the aggregate, Physicians paid a premium above par value for its interest in the Loan Pools in an amount of $5,241,552. The particulars of Physicians' Loan Participation interests, including date of purchase, par value, coupon rate, purchase price and stated maturity date are as set forth below:

| *Purchase Date* | *Purchaser* | *Project* | *Par Value* | *Coupon Rate* | *Purchase Price* | *Stated Maturity* |
|---|---|---|---|---|---|---|
| 02/20/1996 | Physicians Mutual | 1995-4 | 4,993,281.50 | 13.25% | 6,983,572.30 | 06/01/2024 |

| Purchase Date | Purchaser | Project | Par Value | Coupon Rate | Purchase Price | Stated Maturity |
|---|---|---|---|---|---|---|
| 02/28/1996 | Physicians Life | 1996-1 | 2,000,000.00 | 9.00% | 2,291,250.00 | 05/01/2018 |
| 02/28/1996 | Physicians Mutual | 1996-1 | 5,000,000.00 | 9.00% | 5,728,125.00 | 05/01/2018 |
| 11/26/1996 | Physicians Life | 1996-6 | 4,000,000.00 | 13.25% | 5,475,000.00 | 06/01/2024 |
| 11/26/1996 | Physicians Mutual | 1996-6 | 1,000,000.00 | 13.25% | 1,368,750.00 | 06/01/2024 |
| 09/28/2000 | Physicians Mutual | 1995-4 | 2,163,040.79 | 13.25% | 2,551,177.90 | 06/01/2024 |
| Total | | | 19,156,322.29 | | 24,397,875.20 | |

17.    Physicians' participation interests represented a direct ownership interest in the underlying mortgage loans and all proceeds and profits therefrom.  Physicians' participation interests entitled Physicians to their proportionate share of the principal and interest payments made on the underlying mortgage loans.

**The Servicing Agreement.**

18.    GSC was the mortgagee of record, held legal title to the mortgage loans, and had the power to convey and/or assign participation interests in the mortgage loans.  GSC also acted as Servicer for each of the Loan Pools.  As Servicer, GSC was responsible for collecting payments due pursuant to the underlying mortgage notes and remitting the appropriate share to the owners of participation interests.  For each of the Loan Pools, GSC executed a "Pooling and Servicing Agreement" ("Servicing Agreement") which addressed its loan servicing duties and responsibilities.  As an owner of participation interests in the Loan Pools, Physicians was a party to the Servicing Agreements and beneficial owner of the mortgage loans within the Loan Pools. Under each Servicing Agreement, GSC had responsibility "to administer and service the

Mortgage Loans in accordance with customary mortgage servicing practices of prudent lending institutions." Each of the Servicing Agreements for the three subject Loan Pools in which Physicians invested were substantially the same and included the following provision:

> **18.    Assignment of the Mortgage Loan**. The Servicer hereby agrees and certifies that during the term of this Agreement, except as provided in this Agreement, **it shall not assign, convey or otherwise transfer the beneficial interest in the Mortgage Loan** (or any portion thereof) and shall not issue any security backed by the Mortgage Loan (including, without limitation, any Project Loan Certificate backed by the Mortgage and guaranteed by the Government National Mortgage Association) **at any time when the Participation Interest shall be outstanding**.

(Emphasis added.)   In related litigation, Barolak acknowledged that this provision of the Servicing Agreements protected holders of participation interests from having the loans sold out from their Pool.

**The Unlawful Redemption and Resale of Physicians' Loan Participation Interests.**

19.    Notwithstanding the terms of the Servicing Agreements, the Defendants orchestrated and implemented a scheme designed to convert for their own benefit the loan participation interests of Physicians and other investors in the high interest rate Loan Pools. In furtherance of the scheme, Defendants created and recorded documents and engaged in fraudulent transactions with third parties to make it appear as if the borrowers had prepaid and/or "refinanced" their mortgage loans for the purpose of concealing Defendants' theft, unlawful redemption and resale of the loan participation interests of Physicians and other investors in the Loan Pools. Unbeknownst to Physicians, there was never any prepayment or refinancing of the underlying loans by the borrowers in connection with the redemption of Physicians' loan participation interests.

20.    In related litigation, Barolak testified that he, Rosenberg, and Pollock were each the decision makers behind the scheme. In furtherance of the scheme, the Individual Defendants

used the phones and/or directed others to use the phones to call the individual borrowers to request that they cooperate with Defendants by executing a document which purported to give notice of the borrower's "intent to refinance." Such notices were prepared by GSC and were transmitted by mail and/or fax by and between GSC and the individual borrowers. Such notices are included and more specifically identified within Exhibit "A" attached hereto. Notwithstanding, the notices, the underlying loans were not at any relevant time refinanced or prepaid by the borrowers.

21.     At the direction of the Individual Defendants, and to make it appear as if there had been a refinancing by the borrowers, GSC engaged in "circular" or "straw man" transactions with USGI, Inc. ("USGI"), pursuant to which the underlying mortgage loans in each of the Loan Pools were purportedly sold, assigned and/or transferred to USGI. In related litigation, Barolak falsely testified that the assignments to USGI were related to the "prepayment" and/or "refinancings" of the underlying loans. At the time of the redemption of Physicians' loan participation interests, however, the borrowers on the underlying mortgage loans had not prepaid or refinanced their loans. On the same date that GSC assigned the loans to USGI, USGI reassigned the loans back to GSC or, alternatively, issued a Participation Certificate giving GSC 100% ownership interest in the Loan.

22.     Notwithstanding the purported "refinancing" of the loans, the borrowers' financial obligation under the mortgage notes, including the above market interest rates, remained unchanged. No economic benefit was realized by any of the underlying borrowers from the purported "refinancing" transactions. On information and belief, the borrowers continued to make and GSC continued to receive the monthly payments of principal and interest in accordance with the terms of the mortgage notes. The assignment transactions back and forth

between GSC and USGI were nothing more than a pretext so that Defendants could unlawfully redeem, acquire and/or sell the loan participation interests of Physicians and other investors in the Loan Pools.

23.     Once GSC unlawfully redeemed the loan participation interests in the Loan Pools, Defendants were able to cause them to be resold at a substantial premium over and above par value.  For example, on or about May 1, 2003, GSC resold the loan participation interests of Physicians and other investors in the 1995-4 Loan Pool to Jet Premier Investments, LLC.  At the direction of the Individual Defendants, GSC similarly resold loan participation interests of Physicians and other investors in the 1996-1 and 1996-6 Loan Pools at a substantial premium above par and/or held said loan participation interests for its own benefit.

**The Misrepresentations and Omissions.**

24.     As a result of and pursuant to the unlawful scheme, and even though there was never any prepayment or refinancing of any of the underlying loans, Physicians' participation interests in the Loan Pools were redeemed or "called" on the following dates:

| | |
|---|---|
| Greystone 1996-1 | September 25, 2002 |
| Greystone 1995-4 | May 27, 2003 |
| Greystone 1996-6 | May 27, 2003 |

In connection with each redemption, and on or about the call dates identified above, GSC delivered a remittance statement to each holder of a loan participation interest.  Within each remittance statement, GSC falsely represented that the loans had "paid off" and advised of the aggregate amount of "prepayment principal" purportedly received by GSC.  GSC concealed from Physicians and other holders of loan participation interests the true facts concerning the redemptions, including that the underlying borrowers had not prepaid and/or refinanced their mortgage loans.  At all time subsequent to the redemptions, Defendants have continued to

conceal that the borrowers had never prepaid the mortgage loans and continued to make the monthly payments in accordance with the terms of the mortgage loans.

25.    At or about the time of the redemptions of Physicians' interests in the Loan Pools, Asset Allocation and Management Co. "AAM"), Physicians' investment advisor, conducted an investigation to determine the reason for the early redemptions.  On behalf of Physicians and other clients who had invested in the Loan Pools, AAM contacted representatives of Greystone & Co. to inquire as to the circumstances leading to the redemptions.  In response to those inquiries, it was represented to AAM that the redemptions occurred because the underlying loans had prepaid in connection with a restructuring of the mortgage loans under HUD's Mark-to-Market Program.    Richard Heyman, a representative of Greystone & Co., made these representations orally and by email to AAM on or about May 16, 2003.

26.    At all times subsequent to the redemption of Physicians' loan participation interests in the Loan Pools, Defendants fraudulently concealed the true nature of the transactions which led to the redemption of Physicians' interests in the Loan Pools such that Physicians was unable and would have been unable to discover the fraud until May 4, 2007 when it took the deposition of Barolak in related litigation.

27.    As a result of the fraudulent redemptions, Physicians received only the remaining principal balance, or par value, of its interest in each of the underlying loans.  Physicians was deprived of its right to receive further payments under the terms of the high interest rate mortgage notes in each of the Loan Pools which would and/or should have continued to the stated maturity dates of each loan.  Physicians was forced to reinvest the returned par value at interest rates substantially lower than the higher interest rates of the underlying loans and has suffered losses which will continue through the maturity dates of each loan.  Due to and/or as a

10

result of the unlawful conduct of the Defendants, Physicians suffered economic losses in an amount presently undetermined, but not less than $14,167,327.00.

**COUNT I**
**(Breach of Contract – Servicing Agreements)**
**(All Defendants)**

28.    Physicians incorporates paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29.    As a purchaser of participation interests in the Loan Pools, Physicians was a party to the Servicing Agreement entered into with GSC for each Loan Pool and was also beneficial owner of the mortgage loans contained within each Loan Pool.

30.    There was never a prepayment of refinancing by the borrowers on any of the mortgage loans within the Loan Pools in connection with the redemption of Physicians' loan participation interests.  Physicians' interests in the Loan Pools were unlawfully redeemed and resold by GSC in violation of Section 18 of the Servicing Agreement for each Loan Pool.  The acts, actions, commissions, and/or omissions of Greystone constitute a material breach of the Servicing Agreement for each Loan Pool.

31.    Greystone & Co. and the Individual Defendants are liable for breach of the Servicing Agreement as agents, servants, aiders and abettors, co-conspirators and/or alter egos of GSC or each other.

32.    As a direct and proximate result of the breach of the Servicing Agreements, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167.327.00

## COUNT II
### (Breach of Implied Covenant of Good Faith and Fair Dealing)
### (All Defendants)

33.    Physicians incorporates by reference paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34.    Every contract contains an implied obligation of good faith and fair dealing.

35.    GSC was required to carry out its obligations under the Servicing Agreements in good faith.

36.    The acts, actions, commissions, and/or omissions of GSC were intended to and resulted in the unlawful redemptions of Physicians' loan participation interests and unfairly and unlawfully deprived Physicians of its interests in the Loan Pools which were the subject of the Servicing Agreements and constitute a breach of the implied covenant of good faith and fair dealing in contracts and their performance at common law.

37.    Greystone & Co. and the Individual Defendants are liable for GSC's breach of the implied covenant of good faith and fair dealing as agents, servants, aiders and abettors, co-conspirators and/or alter egos of GSC or each other.

38.    As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing in the Service Agreements, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

### COUNT III
### (Breach of Fiduciary Duty)
### (All Defendants)

39.    Physicians incorporates by reference paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.    As Servicer, GSC was the mortgagee of record and held legal title to each of the mortgage loans within the Loan Pools for the benefit of Physicians and other holders of participation interests in the Loan Pools.  At all relevant times, Physicians reposed complete confidence and trust in GSC to collect and properly remit payments due under the mortgage notes contained within each Loan Pool in accordance with the Servicing Agreements and otherwise protect the loan participation interests and rights of owners of participation interests in each of the Loan Pools.  As Servicer, GSC had fiduciary obligations to Physicians and other owners of loan participation interests which included the duties to exercise good faith, loyalty, honesty, and fairness in its dealings with Physicians in connection with the loan participation interests.

41.    The acts, actions, commissions, and/or omissions of GSC in causing the unlawful redemption of Physicians' loan participation interests in each of the Loan Pools, constitute a breach of its fiduciary duty.

42.    As a direct and proximate result of GSC's breach of fiduciary duty, Physicians has suffered and is entitled to compensatory damages and Defendants have been correspondingly unjustly enriched in at least the sum of $14,167,327.00.

43.    Greystone & Co. and the Individual Defendants are liable for GSC's breach of the fiduciary duty as agents, servants, co-conspirators and/or alter egos of GSC or each other.

44.    Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

## COUNT IV
### (Aiding and Abetting a Breach of Fiduciary Duty)
### (All Defendants except Greystone Servicing Corp.)

45.    Physicians incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46.    As Servicer, GSC had fiduciary obligations to Physicians and other owners of loan participation interests which included the duties to exercise good faith, loyalty, honesty, and fairness in its dealing with Physicians in connection with the loan participation interests.

47.    Greystone & Co. and the Individual Defendants, and each of them, are liable as they knowingly acted in concert with, induced, encouraged, participated in, aided and abetted and/or substantially assisted GSC's breach of fiduciary duty.

48.    As a direct and proximate result of the breach, Physicians has suffered and is entitled to compensatory damages and Defendants have been correspondingly unjustly enriched in at least the sum of $14,167,327.00.

49.    Defendants' actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

## COUNT V
### (Conversion)
### (All Defendants)

50.    Physicians incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51.    As a result of the unlawful redemptions, GSC exercised unauthorized control and wrongfully converted Physicians' loan participation interests in each of the Loan Pools to its own benefit and/or the benefit of the other Defendants.

52.    As a direct and proximate result of GSC's conversion of Physicians' loan participation interests, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

53.    Greystone & Co. and the Individual Defendants, are liable as each of them, knowingly acted in concert with, induced, encouraged, participated in, aided and abetted and/or substantially assisted GSC in the unlawful redemption of Physicians' loan participation interests in the Loan Pools.

54.    Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

55.    At all times up and to May 4, 2007, Defendants, and each of them, misrepresented and concealed information related to the redemptions such that Physicians could not discover the unlawful nature of the redemptions.  As a result of their acts, omissions and commissions, Defendants are estopped from asserting a statute of limitations defense.

## COUNT VI
### (Fraud)
### (All Defendants)

56.    Physicians incorporates by reference paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.    In connection with their scheme to unlawfully redeem and convert Physicians' loan participation interests, Greystone & Co. misrepresented to Physicians' investment advisor that the loans prepaid in connection with loan restructurings under HUD's Mark-to-Market Program.  At all relevant times GSC fraudulently concealed from Physicians and its investment advisor the fact that the borrowers had not prepaid and/or refinanced their mortgage loans as well

as the true nature and purpose of the transactions which led to the unlawful redemption of Physicians' loan participation interests in the Loan Pools.

58.    Physicians relied upon and was misled by the acts, actions, commissions and/or omissions of GSC and Greystone & Co.

59.    As a direct and proximate result of said acts, actions, commissions and/or omissions, Physicians has suffered and is entitled to compensatory damages in at least the sum of $14,167,327.00.

60.    Defendant's actions were sufficiently vicious and malicious so as to additionally justify an award of exemplary and punitive damages in an amount to be determined at trial.

61.    The Individual Defendants are liable for said fraudulent acts, actions, commissions and/or omissions as agents, servants, aiders and abettors, co-conspirators and/or alter egos of GSC and/or Greystone & Co. and each other.

## COUNT VII
### (Constructive Trust)
### (All Defendants)

62.    Physicians incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.    Due to and/or as a result of the unlawful and fraudulent conduct described herein, the loan participation interests of Physicians in the Loan Pools were unlawfully and prematurely redeemed and converted by Defendants. Acting in concert with each other, Defendants were able to acquire and either resell Physicians' loan participation interests at a substantial profit and/or enjoy the high interest cash flow streams for their own account in contravention of the rights of Physicians.

64.    By virtue of their unlawful conduct, Defendants earned large sums of money, the exact amount of which is unknown to Physicians and which, in equity and good conscience, should be impressed with a trust in favor of Physicians.

65.    The funds obtained by Defendants from the redemption and/or resale of Physicians' loan participation interests should be declared to be and held in trust by Defendants for the benefit of Physicians.

66.    Defendants should be compelled to provide Physicians with a full accounting of all income and/or other proceeds obtained from the loan participation interests aforesaid.

### COUNT VIII
### (Violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") 18 U.S.C. § 1961 *et seq.*)
### (All Defendants except Greystone Servicing Corporation)

67.    Physicians incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

68.    Greystone & Co. and the Individual Defendants (hereinafter collectively referred to as the "RICO Defendants"), and each of them, is a person as that term is defined in the RICO statute.

69.    GSC is a corporation and constitutes an "enterprise" as that term is defined in the RICO statute.

70.    In connection with their scheme to defraud, the RICO Defendants have on repeated occasions knowingly used or caused to be used the United States mail and interstate wires to unlawfully redeem and convert the loan participation interests of Physicians and others in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).

71.     The multiple predicate acts of mail and wire fraud, as more particularly described in Exhibit "A" attached hereto, constitute "racketeering activity," as that term is defined in the RICO statute.

72.     The multiple acts of racketeering activity by the RICO Defendants were part of an ongoing common plan or scheme to unlawfully redeem and convert the loan participation interests of Physicians and other investors in the subject Loan Pools as well as other loan pools serviced by GSC.  As reflected by Exhibit A, the predicate acts of mail fraud and wire fraud were continuous, systematic and committed over an extended and prolonged period of time.  The predicate acts have continuity and relationship to each other, demonstrate a threat of continued unlawful and illegal activity and constitute a "pattern of racketeering activity" as defined in the RICO statute.

73.     The RICO Defendants, directly and indirectly, have conducted and participated in the conduct of the affairs of GSC, through such pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) of the RICO statute.

74.     The RICO Defendants have further conspired and agreed together to conduct or participate in the conduct of the affairs of GSC through such pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

75.     As a result of the conduct of the RICO Defendants, Physicians has suffered damage to its business or property and is entitled to recover damages in an amount not less than $14,167,327.00, such damages to be trebled pursuant to 18 U.S.C. § 1964(c), plus court costs and reasonable attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** on each Count of their Complaint, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants as follows:

a.    For compensatory, treble and any other damages to the full extent allowed by law; and

b.    For exemplary and punitive damages as permitted by law; and

c.    For an order directing Defendants to account for all proceeds obtained, received, realized and/or recognized from the acquisition and/or resale of Physicians' loan participation interests and further imposing a constructive trust on said funds in favor of Physicians; and

d.    For attorneys fees, costs and other expenses as permitted by law; and

e.    For the costs of this action; and

f.    For such other and further relief as the Court deems just and proper.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL CAUSES.**

**DATED** this 27th day of March, 2008; New York, New York.

PHYSICIANS MUTUAL INSURANCE
COMPANY and PHYSICIANS LIFE
INSURANCE COMPANY, Plaintiffs

By: _____

Richard E. Carmen, Esq. (REC-6906)
Adria DeLandri, Esq. (ADL-5859)
Brief Carmen & Kleiman, LLP
805 Third Avenue, 11th Floor
New York, NY  10022
(212)758-6160
(212)832-7221
rec@briefjustice.com
adl@briefjustice.com

and

James J. Frost, Esq. (JJF-4879)
McGrath, North, Mullin & Kratz, PC LLO
Suite 3700, First National Tower
1601 Dodge Street
Omaha, NE  68102
(402) 341-3070
(402) 341-0216 (fax)
jfrost@mcgrathnorth.com

ATTORNEYS FOR THE PLAINTIFFS

**Exhibit A**

EXHIBIT "A"
CIRCULAR TRANSACTIONS

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| **ALL PROPERTIES** | | | | |
| 4/25/2003 | GSC | Krooth & Altman, LLP | Requesting assignments conveying properties from GSC to USGI and another set from USGI to GSC on 5/1/2003 | Various Email |
| 4/28/2003 | GSC | USGI, Inc. | Sending "Corrected" set of Assignments to convey the property from GSC to USGI and then from USGI back to GSC on 5/1/2003 | Various Email |
| 4/28/2003 | GSC | USGI, Inc. | Message attaching two sets of HUD forms 92080 for each deal from GSC to USGI and from USGI back to GSC.[1] | Email |
| 5/27/2003 | Greystone | Eli & Co. | Remittance Advice | Wire |
| **POOL 1995-4 / ALDUS I** | | | | |
| 4/1/2003 | Samuel Pompa | GSC | Notice of interest in refinancing the existing debt on Aldus I by assignment, not terminated. | Facsimile |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Aldus I) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 4/29/2003 | GSC | USGI | §275 Certification by GSC that Aldus I transaction is a "refinancing" | Mail |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corp. | Allonge | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan documents (Aldus I) | Mail |
| 5/1/2003 | GSC / USGI, Inc. | HUD | Notice of Mortgage Record Change (GSC to USGI) | Mail |

[1] Plaintiff does not possess documents comprising all of the HUD forms 92080 originally in the above cited email message but asserts on good faith and belief that such forms were completed for both sides of each of the deals identified in the email, e.g., Aldus I, Paul Robeson, MBD II, SEBCO IV, Malcolm X, Woodycrest Apartments, Macombs Village and Southern Boulevard.

| DATE | AUTHOR/SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. / GSC | HUD | Notice of Mortgage Record Change (USGI to GSC) | Mail |
| 5/5/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Aldus I) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Aldus I) | Mail |
| UNDATED | USGI, Inc. | GSC | §275 Certification by USGI of Aldus I transaction as "refinancing" | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Financing Statement | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 5/1/2003 | GSC | Jet Investments LLC / Premier | Participation Certificate reflecting Jet's 100% ownership interest in Aldus I | Mail |
| 5/1/2003 | GSC | Jet Investments LLC / Premier | Participation & Servicing Agreement: Jet becomes owner of 100% interest in Aldus I | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of assignment | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Malcolm X II) | Mail |
| 2/26/2003 | CDC | GSC | Letter notifying GSC of desire to refinance existing debt on Malcolm X II Phase A through assignment, not termination | Facsimile |
| **MALCOLM X II** | | | | |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC that Malcolm X transaction is "refinancing" | Mail |
| 5/1/2003 | USGI, Inc. | USGI, Inc. | Allonge | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/1/2003 | GSC | NY Dep't of State | UCC Financing Statement Amendment | Mail |
| 5/5/2003 | GSC | NYC Development Corp. | Recording of assignment | Mail |
| 5/5/2003 | GSC | NYC Housing Development Corp. | Assignment of Mortgage (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. | HUD | Notice of Mortgage Record Change (USGI to HUD) | Mail |
| 5/1/2003 | USGI, Inc. | HUD | Notice of Mortgage Record Change (GSC to USGI) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | § 275 Certification that MBD II transaction is a "refinancing" | Mail |
| 4/29/2003 | GSC | NYC Housing Development Corp. | Allonge | Mail |
| UNDATED | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 6/3/2003 | GSC | NYC Dep't of Finance | Recording of Assignment | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment | Mail |
| 5/5/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (MBD II) | Mail |
| 3/18/2003 | PRC | GSC | Letter providing notice of intent to refinance the existing debt on MBD Phase II | Facsimile |
| **MBD II ASSOCIATES:** | | | | |
| 5/1/2003 | GSC | Jet Investments LLC; Premier | Participation Certificate in Malcolm X II Phase A mortgage | Mail |
| 5/1/2003 | GSC | Jet Investments LLC; Premier | Participation and Servicing Agreement between GSC and Jet | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI that Malcolm X II transaction is "refinancing" | Mail |
| 5/1/2003 | USGI, Inc. | HUD | Notice of Mortgage Record Change, indicating there was a "purchase" by USGI of the mortgage for Malcolm X II | Mail |
| 5/1/2003 | USGI, Inc. | HUD | Notice of Mortgage Record Change, showing a "sale" by Malcolm X II of the mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Malcolm X II) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | (Malcolm X II) | Mail |

3

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (MBD II Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (MBD II Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI, Inc. selling MBD II Associates mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; GSC selling MBD II mortgage back to USGI, Inc. | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (MBD II Associates) | Mail |
| UNDATED | GSC | GSC | § 275 Certification by USGI of MBD II Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | Jet Investments LLC | Participation Certificate reflecting 100% ownership in Mid Bronx Phase II | Mail |
| 5/1/2003 | GSC | Jet Investments LLC | Participation and Servicing Agreement between GSC and Jet | Mail |
| 12/1/2002 | PRC | GSC | Letter stating intent to prepay the Mid Bronx Phase II loan | Facsimile |
| PAUL ROBESON HOUSES ASSOCIATES (GSC) | | | | |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Paul Robeson) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents (Paul Robeson) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Paul Robeson transaction as "refinancing" | Mail |
| 9/25/2003 | GSC | NYC Dept of | Recording of Mortgage Assignment | Mail |

4

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 6/3/2003 | GSC | NY Dep't of State Finance | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by Paul Robeson Houses Associates | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Paul Robeson House Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; Paul Robeson selling mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; Paul Robeson selling mortgage to USGI, Inc. | Mail |
| 5/24/2003 | HUD | USGI, Inc. | Billing statement for Paul Robeson mortgage premium | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Paul Robeson House Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation Certification in Paul Robeson House Associates | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation and Servicing Agreement for ownership in Paul Robeson mortgage | Mail |
| 3/18/2003 | PRC | GSC | Letter stating notice of intent to refinance the existing debt on SEBCO IV by assignment, not termination | Facsimile |
| **SEBCO IV ASSOCIATES** | | | | |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage (SEBCO II) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 5/1/2003 | GSC | USGI, Inc. | § 275 Certification by GSC that SEBCO IV transaction is a "refinancing" | Mail |
| 7/24/2003 | GSC | NYC Dep't of Finance | Recording of Mortgage Assignment | Mail |

5

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/11/2003 | USGI, Inc. | GSC | Assignment of Mortgage (SEBCO IV Associates) | Mail |
| 5/11/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by SEBCO IV Associates | Mail |
| 5/11/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (SEBCO IV Associates) | Mail |
| 5/11/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (SEBCO IV Associates) | Mail |
| 5/11/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI selling mortgage to GSC | Mail |
| 5/11/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; GSC selling mortgage to USGI | Mail |
| 6/23/2003 | Greystone | USGI, Inc. | Forwarding Assignment of Mortgage | Mail |
| UNDATED | USGI, Inc. | | § 275 Certification by USGI of SEBCO IV Associates transaction as "refinancing" | Mail |
| 2/16/2003 | CDC | GFC | Letter stating intent to refinance existing debt on Southern Boulevard Phase IV | Facsimile |
| *SOUTHERN BOULEVARD* | | | | |
| UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/11/2003 | GSC | USGI, Inc. | Assignment of Mortgage (Southern Boulevard) | Mail |
| 5/11/2003 | GSC | USGI, Inc. | Assignment of Security Agreement (Southern Boulevard) | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Southern Boulevard transaction as "refinancing" | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Financing Statement Amendment | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by Southern Boulevard Associates | Mail |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corp. | Allonge | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Southern Boulevard IV Associates) | Mail |
| 5/1/2003 | USGI, Inc. GSC | GSC | Assignment of Security Agreement (Southern Boulevard IV Associates) | Mail |
| 5/1/2003 | USGI, Inc GSC | HUD | Notice of Mortgage Record Change; GSC selling Southern Boulevard IV mortgage to USGI | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI selling Southern Boulevard IV mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Southern Boulevard IV Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Southern Boulevard IV Associates transaction as "refinancing" | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation Certificate in Southern Boulevard Phase IV | Mail |
| 5/1/2003 | GSC | JET Premier Investments LLC | Participation and Servicing Agreement Certificate for Southern Boulevard Phase IV | Mail |
| 3/20/2003 | E&M Associates | GSC | Notice of desire to refinance Woodycrest Court project by assignment, not termination | Facsimile |
| *WOODYCREST COURT ASSOCIATES* | | | | |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 4/29/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 5/1/2003 | GSC | USGI, Inc. | § 275 Certification by GSC describing Woodycrest transaction as a "refinancing" | Mail |
| 5/5/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |

7

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by Woodycrest Courts Apartments | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Mortgage (Woodycrest Courts Apartments) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Woodycrest Courts Associates) | Mail |
| 5/1/2003 | USGI, Inc | HUD | Notice of Mortgage Record Change: GSC selling Woodycrest Court Associates mortgage to USGI | Mail |
| 5/1/2003 | USGI, Inc. GSC | HUD | Notice of Mortgage Record Change; USGI selling Southern Boulevard IV mortgage to GSC | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Woodycrest Court Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Woodycrest Court Associates transaction as "refinancing" | Mail |
| **POOL 1996 / SEBCO I AND SEBCO II ASSOCIATES** | | | | |
| 7/11/2002 | PRC | GSC | Notice of intent to prepay SEBCO I and II Mortgage Loans | Facsimile |
| 7/29/2002 | PRC | GSC | Letter stating notice of intent to prepay SEBCO I and II Mortgage Loans | Facsimile |
| 8/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage (SEBCO II Associates) to USGI, Inc. | Mail |
| 8/30/2002 | GSC | First National City Bank | Allonge to Mortgage Note by SEBCO II Associates | Mail |
| 8/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage from GSC | Mail |
| UNDATED | GSC | USGI, Inc. | § 275 Certification by GSC of SEBCO I Associates transaction as "refinancing" | Mail |
| UNDATED | GSC | USGI, Inc. | § 275 Certification by GSC of SEBCO II Associates transaction as "refinancing" | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Security Agreement to USGI | Mail |

| DATE | AUTHOR/SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 8/30/2002 | GSC | USGI | (SEBCO I Associates) | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Security Agreement to USGI (SEBCO I Associates) | Mail |
| 8/30/2002 | GSC | USGI | Assignment of Collateral Loan Documents (SEBCO II Associates) | Mail |
| 8/30/2002 | USGI | USGI | Assignment of Collateral Loan Documents (SEBCO II Associates) | Mail |
| UNDATED | GSC | City Register of Bronx County | UCC Financing Statement Amendment; noting assignment of Financing Statement File 88PX03514 to USGI, Inc. | Mail |
| UNDATED | GSC | City Register of Bronx County | UCC Financing Statement Amendment; noting assignment of Financing Statement File 88PX03515 to USGI, Inc. | Mail |
| UNDATED | GSC | New York Secretary of State | UCC Financing Statement Amendment; noting assignment of Financing Statement File 123321 to USGI, Inc. | Mail |
| UNDATED | GSC | New York Secretary of State | UCC Financing Statement Amendment; noting assignment of Financing Statement File 123322 to USGI, Inc. | Mail |
| 8/30/002 | GSC | NYC Department of Finance, Office of City Registrar | Recording of Mortgage Assignment from GSC to USGI (SEBCO II) | Mail |
| 8/29/2002 | USGI | GSC | Fax attaching GSC signature on execution page of Participation & Servicing Agreement for Sebco I and II | Facsimile |
| 8/29/2002 | USGI | GSC | Fax attaching USGI signature on execution page of Participation & Servicing Agreement for Sebco I and II | Facsimile |
| POOL 1996-6 FAIRMONT PLACE | | | | |
| 12/1/2002 | Alpert & Alpert | GSC | Letter stating desire to refinance debt on Fairmont Place Apartments by assignment not termination | |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU-MENTALITY |
|---|---|---|---|---|
| 12/23/2002 | Alpert & Alpert | GSC | Letter stating desire to prepay debt on Fairmont Place Apartments | Facsimile |
| 12/27/2002 | USGI, Inc. | Nomura Asset Capital Corporation | Sending Participation Certification and Assumption Agreement w/ copy of Note and P&S Agreement for Fairmont Place | Mails |
| 12/30/2002 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 12/30/2002 | GSC | USGI, Inc. | § 275 Certification by GSC that Fairmont Place transaction is a "refinancing" | Mail |
| 6/6/2003 | GSC | NYC Department of Finance, Office of City Registrar | Recording of Mortgage Assignment from GSC to USGI (Fairmont Place Apartments) | Mail |
| **MACOMBS VILLAGE ASSOCIATES** | | | | |
| 3/20/2003 | Ashton Management Corp. | GSC | Letter stating notice of intent to prepay Macombs Village loan | Facsimile |
| 5/1/2003 | USGI, Inc. | NYC Housing Development Corporation | Allonge to Mortgage Note by Macombs Village Associates | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Mortgage | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Collateral Loan Documents | Mail |
| 5/1/2003 | GSC | USGI, Inc. | Assignment of Security Agreement | Mail |
| 4/UNDATED | GSC | NYC Housing Development Corp. | Allonge | Mail |
| 5/2/2003 | GSC | NYC Dep't of Finance | Recording of Assignment of Mortgage | Mail |
| 6/3/2003 | GSC | NY Dep't of State | UCC Filing Statement Amendment | Mail |
| 5/1/2003 | GSC | GSC | Assignment of Mortgage (Macombs Village Associates) | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Security Agreement (Macombs Village Associates) | Mail |
| UNDATED | USGI, Inc. | GSC | § 275 Certification by USGI of Macombs Village Associates transaction as "refinancing" | Mail |
| 5/1/2003 | USGi, Inc GSC | HUD | Notice of Mortgage Record Change; GSC selling Macombs Village Associates mortgage | Mail |

| DATE | AUTHOR/ SENDER | RECIPIENT | SUBJECT MATTER | INSTRU- MENTALITY |
|---|---|---|---|---|
| 5/1/2003 | USGI, Inc GSC | HUD | Notice of Mortgage Record Change; USGI selling Macombs Village Associates mortgage to GSC to USGI | Mail |
| 5/1/2003 | USGI, Inc. | GSC | Assignment of Collateral Loan Documents (Macombs Village Associates) | Mail |

11

## CERTIFICATE OF SERVICE

This certifies the undersigned attorney has caused service of the above-foregoing FIRST AMENDED COMPLAINT AND JURY DEMAND to be made by United States mail, postage prepaid, to the following attorneys representing Defendants in the above-entitled action on this 27th day of March, 2008 :

Stephen L. Saxl                         José A. Isasi, II
William A. Wargo                        Greenberg Traurig, LLP
Greenberg Traurig, LLP                  77 West Wacker Drive, Suite 2500
200 Park Avenue                         Chicago, IL  60601
New York, NY  10166


_____
RICHARD E. CARMEN, ESQ.

21