**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **PHYSICIANS MUTUAL INSURANCE COMPANY and PHYSICIANS LIFE INSURANCE COMPANY,** | ) | **CIVIL ACTION NO. 07 CV 10490 (NRB)** |
| Plaintiffs, | ) | **ELECTRONICALLY FILED** |
| v. | ) | (Removed from the Supreme Court of the State of New York County, New York, Index No. 602918/07) |
| **GREYSTONE SERVICING CORPORATION, INC., GREYSTONE & CO., INC., STEPHEN ROSENBERG, ROBERT R. BAROLAK, and CURTIS A. POLLOCK,** | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR STAY**

James J. Frost, Esq. (JJF-4879)
McGrath, North, Mullin & Kratz, PC LLO
Suite 3700, First National Tower
1601 Dodge Street
Omaha, NE 68102
(402)341-3070
(402)341-0216 (fax)
jfrost@mcgrathnorth.com

and

Richard E. Carmen, Esq. (REC-6906)
Adria DeLandri, Esq. (ADL-5859)
Brief Carmen & Kleiman, LLP
805 Third Avenue, 11th Floor
New York, NY 10022
(212)758-6160
(212)832-7221
rec@briefjustice.com
adl@briefjustice.com

*Attorneys for Plaintiffs Physicians Mutual Insurance Company and Physicians Life Insurance Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................1

STATEMENT OF FACTS ....................2

1. Physicians' Loan Participation Interests ....................2

2. Physicians' Claims Against Asset Allocation Relate to the Purchase of the Loan Participation Interests ....................3

3. The Claims Against Defendants Relate to the Unlawful Taking of Physicians' Loan Participation Interests ....................5

4. Physicians' Claims Against Defendants Arise from Separate Transactions and Seek Entirely Different Damages than Sought from Asset Allocation ....................6

ARGUMENT ....................7

1. Judge Conlon's Memorandum Opinion has No Preclusive Effect Because There is No "Identical" Issue ....................7

2. There is No Basis to Stay Physicians' Claims Against These Defendants ....................10

CONCLUSION ....................14

**TABLE OF AUTHORITIES**

**Page**

Acacia Villa v. The United States,
24 Cl. Ct. 445 (1991) ....................................................................................7, 11

American Steamship Owners Mutual Protection and Indem. Association, Inc. v. Lafarge North America, Inc.,
474 F. Supp. 2d 474 (S.D.N.Y. 2007)........................................................................10

Ballweg v. City of Springfield,
499 N.E.2d 1373 (Ill. 1986) ........................................................................................7

Hicks v. City of New York,
268 F. Supp. 2d 238 (E.D.N.Y. 2003) ......................................................................10

Inn Chu Trading Co., Ltd. v. Sara Lee Corp.,
810 F. Supp. 501 (S.D.N.Y. 1992)..............................................................................10

John's Installation, Inc. v. Ciska Construction Co., Inc.,
671 F. Supp. 289 (S.D.N.Y. 1987)..............................................................................10

LaSala v. Needham & Company, Inc.,
399 F. Supp. 2d 421 (S.D.N.Y. 2005)........................................................................13

Ofosu v. McElroy,
98 F.3d 694 (2nd Cir. 1996)........................................................................................13

Rogers v. Desiderio,
58 F.3d 299 (7th Cir. 1995) ..........................................................................................7

U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,
811 F. Supp. 802 (E.D.N.Y. 1992) ..............................................................................13

Physicians Mutual Insurance Company and Physicians Life Insurance Company (collectively "Physicians") submit the following Memorandum of Law in Opposition to the Defendants' Motion for Stay.

**INTRODUCTION**

The pending Motion for Stay of the Defendants is predicated exclusively on the collateral estoppel effect of the Memorandum Opinion issued by Judge Conlon in the Illinois action brought by Physicians against its investment advisor. Notwithstanding their wrongful conduct, Defendants assert that Physicians has no remedy against them. Defendants argue that, even assuming that the "improper"[1] redemptions occurred, there are no damages because Judge Conlon found that Physicians recovered its purchase price and a market rate of interest prior to Defendants' conversion of Physicians' Loan Participation Interests. Even though Physicians held ownership interests in the loans and had a contractual right to continue to receive the proceeds of the high interest rate notes, Defendants argue that Judge Conlon's finding that Physicians suffered no out-of-pocket loss related to the purchase of the investments shields them from liability for the subsequent wrongful taking of those investments. Under Defendants' distorted view of the law, an investor has no recourse against thieves or other wrongdoers who convert and/or misappropriate a security so long as the investor has recovered his purchase price. Thus, applying the logic of Defendants' argument, loan servicers like Greystone Servicing Corporation are seemingly free to convert valuable loan participation interests even when relevant Servicing Agreements expressly prohibit such conduct. Fortunately, the law provides no such protection to Defendants. Notwithstanding the Memorandum Opinion of Judge Conlon, Physicians is entitled to recover from the Defendants for the conversion of Physicians' Loan Participation Interests and breach of the Servicing Agreements. The issues determined by Judge

---

[1] *Defendants' Brief* at 12.

Conlon are not even similar much less identical to those presented by Physicians' claims against these Defendants. The doctrine of collateral estoppel has no application in this case. Defendants' Motion for Stay should be denied.

## STATEMENT OF FACTS

### 1. Physicians' Loan Participation Interests.

Physicians' claims in this matter stem from the wrongful redemption of its loan participation interests in three (3) separate pools of federally insured mortgage loans (hereinafter the "Loan Participation Interests"). The underlying mortgage loans bore rates of interest up to 13.25 percent. *First Amended Complaint,* ¶ 14. All three of the Loan Pools were serviced by Defendant Greystone Servicing Corporation. Physicians' Loan Participation Interests represented a direct ownership interest in the underlying mortgage loans and contractually entitled them to a proportionate share of the principal and interest payments made on the loans. *First Amended Complaint,* ¶ 17.

Physicians paid a premium above par value for its Loan Participation Interests in an aggregate amount in excess of $5 million. *First Amended Complaint,* ¶ 16. Physicians paid the premium based on representations of its investment advisor, Asset Allocation & Management Company ("Asset Allocation"), that there existed "call protection" or "prepayment lockouts" for all or a substantial part of the life of the underlying loans. *Memorandum Opinion*[2] at 3. In fact, no such prepayment protection existed. Because of the negligence and misrepresentations of Asset Allocation, Physicians substantially overpaid for the Loan Participation Interests.

Physicians' Loan Participation Interests were redeemed or "called" in September 2002 and May 2003. *First Amended Complaint*, ¶ 24. At the time of the redemptions, Physicians'

[2] Memorandum Opinion and Order of Judge Conlon dated September 28, 2007 attached to Defendants' Appendix as Exhibit C.

investment advisor was led to believe that the loans were paid off as a result of the restructurings of the loans under HUD's Mark-to-Market Program. *First Amended Complaint*, ¶ 25. Unbeknownst to Physicians, there were never any loan restructurings or payoffs of the underlying loans at the time of the redemptions. Instead, Defendants engaged in "straw man" or "circular transactions" with USGI for the purpose of making it appear as if there had been a refinancing. In reality, Defendants unlawfully redeemed and either resold Physicians' Loan Participation Interests or held them for Defendants' own account. *First Amended Complaint*, ¶¶ 19-23. It was not until May 2007, when Physicians deposed Greystone Funding Corporation, in the Illinois action (see below), that Defendants' wrongful conduct was discovered.

**2. Physicians' Claims Against Asset Allocation Relate to the Purchase of the Loan Participation Interests.**

Physicians initiated claims against Asset Allocation in the United States District Court for the Northern District of Illinois. In the Illinois action, Physicians asserted claims against Asset Allocation for professional negligence, breach of fiduciary duty, breach of contract and fraud alleging that Asset Allocation "failed to conduct adequate due diligence on the investments and misrepresented the risks associated with them, thereby resulting in a loss of excess premium and income." *Memorandum Opinion* at 2. Physicians' claims against Asset Allocation were predicated on losses resulting from the artificially inflated purchase price of the Loan Participation Interests. *Memorandum Opinion* at 4. ("Physicians asserts that they would not have paid such a high premium for their participation interests, or would have never invested in the securities"). Physicians sought to recover from Asset Allocation the amount by which it overpaid for the Loan Participation Interests ("excess premium") and consequential losses including reinvestment losses resulting from the prematurely returned principal. *Memorandum Opinion* at 10.

In her Memorandum Opinion, Judge Conlon found that Physicians could not recover on its claims against Asset Allocation because it had not suffered "any legally compensable loss" from its purchase of the securities. *Memorandum Opinion* at 7. Judge Conlon separately analyzed the damages sought by Physicians over the time periods before and after the call dates (dates of redemption). As to the damages sought for the time period before the calls (the excess premium and lost income on the excess premium[3]), Judge Conlon found that no out-of-pocket loss had been suffered because Physicians "recovered the purchase price (which included the price of the premiums) and profited more than they would have if they invested in Treasury notes over the same period." *Memorandum Opinion* at 11. As to the consequential reinvestment losses[4] sought after the call dates, Judge Conlon stated that "whether this amount can be considered a consequential loss depends on whether the investments were guaranteed to make the stated yields." *Memorandum Opinion* at 13. Judge Conlon found that Physicians could not recover the reinvestment losses because an "early call was inherent in the investment risk." *Memorandum Opinion* at 13. Citing to Illinois cases involving claims related to the purchase of speculative securities, the court concluded that any loss of income after the call dates constituted "expectation damages" and "fruits of unrealized speculation." *Memorandum Opinion* at 12-14. Because the securities purchased by Physicians were not guaranteed to produce a particular yield, Judge Conlon determined that the consequential reinvestment losses were speculative and unrecoverable. *Memorandum Opinion* at 12-15.

---

[3] Physicians is not seeking to recover any losses from the Defendants related to its overpayment for the Loan Participation Interests.

[4] Physicians is not seeking to recover from Defendants the consequential "reinvestment losses" sought from Asset Allocation. Physicians is entitled to recover from Defendants damages equivalent to the principal and interest payments that it would have continued to receive pursuant to the terms of the underlying mortgage notes. The principal balance of the loans which was prematurely returned to Physicians and any income generated from the reinvestment of those funds will serve only to mitigate Physicians' loss.

**3. <u>The Claims Against Defendants Relate to the Unlawful Taking of Physicians' Loan Participation Interests</u>.**

As previously noted, during the deposition of Greystone Funding Corporation, taken in the Illinois action, Physicians discovered that there never was any prepayment or refinancing by the borrowers on the underlying mortgage loans. *First Amended Complaint,* ¶¶ 26, 30. The loans were simply resold by the Defendants to other investors in violation of the terms of the Servicing Agreements or held for Defendants' own account. *First Amended Complaint,* ¶ 23. In order to conceal their scheme, Defendants orchestrated and implemented "circular transactions" with a third party (USGI) to make it appear as if the loans had been refinanced or restructured. *First Amended Complaint,* ¶¶ 19-23. In fact, however, the underlying loans were never refinanced, restructured, satisfied, amended or prepaid. Subsequent to the redemption of Physicians' Loan Participation Interests, the borrowers continued to make principal and interest payments according to the unchanged terms of the mortgage notes. The only difference was that either the Defendants or other investors were now enjoying the benefits of the above market interest rates. Thus, Physicians' Loan Participation Interests were not redeemed in connection with the loans being "paid off" as represented in the Remittance Statements prepared by Defendants or as part of any restructuring under HUD's Mark-to-Market Program as represented to Asset Allocation. *First Amended Complaint,* ¶¶ 24, 25. Unbeknownst to Physicians at the time, its Loan Participation Interests had been unlawfully redeemed in breach of the Servicing Agreements and converted by Defendants. *First Amended Complaint,* ¶ 30. As a result of the wrongful conduct of Defendants, Physicians was deprived of its ownership interest in the Loan Pools and its contractual right to continue to receive the above market interest payments which continued to be made on the underlying mortgage loans.

**4. Physicians' Claims Against Defendants Arise from Separate Transactions and Seek Entirely Different Damages than Sought from Asset Allocation.**

Unlike the Illinois action, Physicians' claims against the Defendants do not involve any claim for losses resulting from the purchase of a security. Physicians' claims against the Defendants stem from the unlawful taking or theft of its ownership interest in the underlying mortgage loans and breach of the Servicing Agreements. Thus, the transactions which are the subject of the two actions are separate and distinct.

Nor is there any overlap in the damages sought in the two actions. Physicians is not seeking to recover from these Defendants the excess premium paid for the Loan Participation Interests or the consequential reinvestment losses which were the subject matter of Judge Conlon's Memorandum Opinion. Unlike the Illinois action, Physicians' claims do not present any issue related to the recovery of the excess premium paid for the Loan Participation Interests or consequential losses from a speculative investment. Physicians' claims are not brought as a disappointed investor, but as an owner of an asset that was wrongfully converted by Defendants. As an owner of the Loan Participation Interests, Physicians was contractually entitled under the Servicing Agreements to a proportionate share of all principal and interest payments made on the underlying loans. If successful on its claims, Physicians will be entitled to recover those payments from Defendants as direct damages and regardless of the inherent investment risks associated with the Loan Participation Interests. Physicians had a duty to mitigate damages and, of course, did so by reinvesting the principal balance of the loans which was returned to Physicians upon the redemption of its Loan Participation Interests. The revenues realized by Physicians through reinvesting the prematurely returned principal will serve only to mitigate the losses sustained by Physicians.

In sum, the claims and damage issues which will be presented in this action were never litigated in the Illinois action against Asset Allocation. Judge Conlon's Memorandum Opinion, consequently, has no preclusive effect on any issue relevant to Physicians' claims against these Defendants.

## ARGUMENT

### 1. Judge Conlon's Memorandum Opinion has No Preclusive Effect Because There is No "Identical" Issue.

Collateral estoppel is an equitable doctrine created to prevent relitigation of previously adjudicated issues. Ballweg v. City of Springfield, 499 N.E.2d 1373, 1375 (Ill. 1986). Three elements must be met before a court may apply collateral estoppel:

(1) The issue decided in the first case must be identical to the one presented in the second case;

(2) There must have been a final judgment[5] on the merits in the first case; and

(3) The party against whom the estoppel is asserted must have been a party to, or in privity with a party to, the first case.

Id. at 1375.

The Court need look no further than the first element to resolve Defendants' Motion. Simply put, there is not a single "identical" issue between the two actions. None of the issues

[5] There seems to be some confusion under Illinois law as to whether a judgment may be considered "final" when there is an appeal pending. *See* Rogers v. Desiderio, 58 F.3d 299, 302 (7th Cir. 1995) ("To be blunt, we have no idea what the law in Illinois is on the question of whether a pending appeal destroys the preclusive effect of a judgment"). Assuming that a pending appeal prohibits application of the doctrine of collateral estoppel, the lack of finality to Judge Conlon's Memorandum Opinion is further reason to deny Defendants' motion to stay. Moreover, where as here it can be determined that Judge Conlon's Memorandum Opinion has no preclusive effect, a further stay pending appeal is fundamentally "inefficient." *See* Acacia Villa v. The United States, 24 Cl. Ct. 445, 448 (1991) ("Second, and more fundamentally, it would be inefficient for this court to stay this proceeding [pending a Ninth Circuit appeal] before even considering the threshold issue of whether the doctrine of issue preclusion potentially applies").

determined by Judge Conlon are presented in Physicians' case against these Defendants. Judge Conlon's Memorandum Opinion addressed the issue of the damages recoverable by Physicians against its investment advisor related to Physicians' purchase of securities. Physicians alleged that, as a result of the negligence and misrepresentations of Asset Allocation, Physicians overpaid for the Loan Participation Interests. Judge Conlon found that Physicians recovered the overpayment as well as any loss of income on the overpayment. Physicians also sought to recover consequential damages in the form of reinvestment losses.[6] Judge Conlon reasoned that consequential losses related to the purchase of a security were recoverable only if the security was risk free. *Memorandum Opinion* at 12. Judge Conlon held that because the Loan Participation Interests were not guaranteed to produce a particular yield, that any consequential damages claimed by Physicians after the call date were speculative and unrecoverable. *Memorandum Opinion* at 13.

In short, Judge Conlon analyzed the damages recoverable by a disappointed purchaser of a speculative security. In contrast, Physicians' claims against these Defendants are not even based on the purchase of a security. Physicians is not alleging that Defendants induced their investment decisions through misrepresentations and omissions (as were the allegations against Asset Allocation). Instead, Physicians alleges that these Defendants wrongfully redeemed the Loan Participation Interests and thus converted assets owned by Physicians and breached the Servicing Agreements. The transaction which is the subject of the Illinois suit is the purchase of

---

[6] Physicians' claim for consequential reinvestment losses was based on the theory that its investments were intended to have long term durations and that, instead of purchasing the subject Loan Participation Interests, Physicians could have made alternative long term investments at the then prevailing interest rates. When the principal was prematurely returned to Physicians, it was forced to reinvest the principal at lower interest rates than were available on the original purchase dates. *Memorandum Opinion*, ¶¶ 10, 13. *See also* "Plaintiffs' Response to Rule 56.1 Statement of Facts," No. 56, attached to Defendants' Appendix as Exhibit B. By way of example, in lieu of purchasing the Loan Participation Interest, Physicians could have invested in Treasury securities with 30-year durations and realized a yield of approximately 6.5%. Upon redemption of the Loan Participation Interest, long term Treasury rates had declined to approximately 3.5%. Consequently, upon reinvestment of the returned principal, the earning power of Physicians' money had declined by approximately 3%.

the Loan Participation Interests. The transaction which is the subject of Physicians' claims against these Defendants is the redemption of the Loan Participation Interests. Thus, the transactions which are the subject matters of the two actions are separate and distinct.

Nor do the claims in the two actions present the same damage issues. Whether there existed an inherent prepayment or other risk related to the Loan Participation Interests is irrelevant to Physicians' damage claims against these Defendants. Investors are entitled under the law to recover damages resulting from the conversion of a security whether or not it is risk free. The fact that there existed prepayment risk on the underlying loans will not affect the damages recoverable from Defendants for their wrongful redemption of Physicians' Loan Participation Interests and breach of the Servicing Agreements. Equally irrelevant is the issue of whether Physicians recovered any out-of-pocket loss associated with the purchase of the Loan Participation Interests. Physicians held an ownership interest in the underlying loans and was contractually entitled to <u>continue</u> to receive its proportionate share of all payments made by the borrowers. The fact that Physicians had received its purchase price (under whatever pretext or guise claimed by Defendants) would not have given license to these Defendants to convert Physicians' Loan Participation Interests and deprive Physicians of the remaining payments made on the underlying mortgage loans.

In sum, the claims and issues presented in this case are not even similar much less "identical" to those which were adjudicated in the Illinois action.

Without citation to any record or even plausible explanation, Defendants assert that the "same damage calculations are at issue in the Asset Allocation Litigation and the present litigation." *Defendants' Brief* at 11. Defendants are wrong. As demonstrated above, none of the

damage issues analyzed by Judge Conlon are relevant to Physicians' claims against these Defendants.[7]

In this action, Physicians seeks to recover the principal and interest payments that were actually made by the borrowers under the terms of the mortgage notes. Physicians was contractually entitled to and would have continued to receive its proportionate share of those payments but for the wrongful conduct of these Defendants. As those payments are a matter of record, there will be no "speculation" as to the amount of Physicians' damages. Physicians' damage claims against these Defendants are predicated on its contractual right to payments actually made on the underlying mortgage notes. Physicians' damage claims are not consequential in nature and have nothing to do with "yields promised" on a speculative security. *Memorandum Opinion* at 12.

**2. There is No Basis to Stay Physicians' Claims Against These Defendants.**

A stay of a civil case is an "extraordinary remedy." Hicks v. City of New York, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003). A district court should limit its discretion to stay proceedings to "exceptional circumstances." Inn Chu Trading Co., Ltd. v. Sara Lee Corp., 810 F. Supp. 501, 507 (S.D.N.Y. 1992) (*citation omitted*). The proponent of a stay "bears the burden of demonstrating the wisdom and justice of a stay," John's Installation, Inc. v. Ciska Construction Co., Inc., 671 F. Supp. 289, 297 (S.D.N.Y. 1987), and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage on someone else." American Steamship Owners

[7] In the Illinois action, Physicians sought to recover the following losses: (1) the amount by which it overpaid for the investments; (2) lost income on such overpayment; and (3) consequential reinvestment losses predicated on "alternative yields that they (sic) could have been realized during the same period that AAM 'promised' the investments would remain intact." *Memorandum Opinion* at 10.

Mutual Protection and Indem. Association, Inc. v. Lafarge North America, Inc., 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007) (*citation omitted*).

In considering whether an action should be stayed, courts in the Second Circuit generally consider:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

Id. at 482 (*citation omitted*).

In this case, Defendants rely exclusively on the doctrine of collateral estoppel to support their Motion for Stay. As previously demonstrated, none of the claims or damage issues determined by Judge Conlon are presented in Physicians' action against these Defendants or otherwise "bear upon" these proceedings. Judge Conlon's Memorandum Opinion addressed the damages recoverable with respect to the purchase of a speculative security. It can have no preclusive effect as to the damages recoverable from these Defendants for the unlawful taking of Physicians' Loan Participation Interests and breach of the Servicing Agreements. Regardless of the pendency of Physicians' appeal to the Seventh Circuit, there is no justification to further delay these proceedings.[8] Even if Judge Conlon's opinion is affirmed, there is no collateral estoppel effect in this litigation. Consequently, a stay pending the Seventh Circuit appeal is

---

[8] During an earlier pre-motion conference, the Court indefinitely stayed discovery in this matter on the basis of Defendants' assertion that Judge Conlon's Memorandum Opinion would collaterally estop Physicians from recovering against these Defendants. In essence, the Defendants were given the benefits of a stay without the requisite showing and without the Court having the opportunity to fully consider whether the Memorandum Opinion of Judge Conlon has any preclusive effect. Physicians has demonstrated herein that there is no collateral estoppel effect in this litigation from Judge Conlon's Memorandum Opinion. Any further stay during the pendency of the appeal to the Seventh Circuit would unfairly deprive Physicians of its right to expeditiously pursue its claims and potentially jeopardize claims against these Defendants as well as third parties. Defendants are wrongdoers, cannot establish the requirements for application of the doctrine of collateral estoppel and should not have the benefit of a continued stay simply because Judge Conlon's decision may not yet be "final." A continued stay of discovery will unnecessarily delay resolution of this matter. Physicians respectfully urges this Court to deny Defendants' Motion for Stay and to allow the parties to initiate discovery.

"inefficient" and will only result in further and unnecessary delay. *See* Acacia Villa, *supra* at 448. Notwithstanding the pendency of Physicians' appeal, this Court should therefore deny Defendants' Motion for Stay.

As Judge Conlon's Memorandum Opinion has no preclusive effect, there is no need for this Court to consider the five factors which are to guide discretionary decisions relating to the requests for stay. However, even if the Court were to give consideration to the five factors, appropriate analysis would respectfully dictate that Defendants' Motion be denied.

(a) Physicians' Interests. Physicians has a right to an expeditious resolution of its claims. Although Defendants' wrongful conduct was not discovered until May 2007, Physicians' Loan Participation Interests were redeemed in September 2002 and May 2003. After discovery of Defendants' wrongful conduct, Physicians timely pursued their rights against these Defendants. As further time passes without Physicians being allowed to conduct discovery, the risk increases that evidence will be lost/destroyed, witnesses will die, and/or that memories of relevant events will fade. Moreover, the applicable statutes of limitations continue to run on potential claims against third parties. For example, a stay of these proceedings will prevent Physicians from taking discovery from third parties such as USGI who was involved in the "circular" transactions with Defendants. Until it can take the deposition of USGI, Physicians cannot determine if it conspired with Defendants to convert Physicians' Loan Participation Interests. With the potential bar of a statute of limitations, it

would be unjust to further delay these proceedings and prejudice Physicians' rights against third parties.

(b) The Defendants' Interests. A request for a stay is an equitable request. Ofosu v. McElroy, 98 F.3d 694 (2nd Cir. 1996). The Defendants, however, are wrongdoers and not in a position to seek equitable relief. Defendants want only to delay the orderly progression of this case. Whether or not Judge Conlon's opinion is affirmed on appeal, there is no basis on which to apply the doctrine of collateral estoppel and no other reason to warrant the extraordinary relief of a stay order. Defendants cannot claim undue prejudice from being required to defend claims which result from their wrongful conduct. Defendants have already had the benefits of a stay without the requisite showing. A further stay pending disposition of the Seventh Circuit appeal will unfairly reward Defendants whose wrongful conduct caused Physicians' loss and result in unnecessary delay.

(c) The Interest of the Court. Courts are generally reluctant to stay proceedings because they are concerned with vindicating a plaintiff's right to proceed with its case. LaSala v. Needham & Company, Inc., 399 F. Supp. 2d 421, 428 (S.D.N.Y. 2005). The convenience of the court is best served when stays are discouraged. U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc., 811 F. Supp. 802, 808 (E.D.N.Y. 1992). As Judge Conlon's opinion has no preclusive effect, a further stay will not result in any conservation of judicial resources. The interest of the court, therefore, militate in favor of a denial of Defendants' Motion.

(d) The Interests of Non-Parties or the Public. There are no interests of non-parties or the public which can be prejudiced by a denial of Defendants' Motion. Third parties such as USGI who played a role in the "circular" transactions are better served by addressing the issues now before further time passes and evidence is lost. The public interest is obviously served by the orderly progression of this matter.

**CONCLUSION**

Physicians respectfully urges this Court to reject Defendants' request to further stay the orderly progression of this case during the pendency of the Seventh Circuit Appeal. A thorough analysis of Judge Conlon's Memorandum Opinion conclusively demonstrates that there are no "identical" issues and no opportunity for any collateral estoppel effect on this litigation. As such, there is no basis for a stay and the interests of all parties concerned are best served by allowing Physicians to expeditiously pursue its claims.

**DATED** this 30th day of May, 2008.

Respectfully submitted,

**PHYSICIANS MUTUAL INSURANCE COMPANY and PHYSICIANS LIFE INSURANCE COMPANY,** Plaintiffs

By: /s/ James J. Frost

James J. Frost, Esq. (JJF-4879)
McGrath, North, Mullin & Kratz, PC LLO
Suite 3700, First National Tower
1601 Dodge Street
Omaha, NE 68102
(402)341-3070
(402)341-0216 (fax)
jfrost@mcgrathnorth.com

and

Richard E. Carmen, Esq. (REC-6906)
Adria DeLandri, Esq. (ADL-5859)
Brief Carmen & Kleiman, LLP
805 Third Avenue, 11th Floor
New York, NY 10022
(212)758-6160
(212)832-7221
rec@briefjustice.com
adl@briefjustice.com

ATTORNEYS FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE**

This certifies the undersigned attorney has caused service of the above-foregoing document to be made by electronic notification via the CM/ECF system to the following attorneys representing the parties to this action on this 30th day of May, 2008 :

Stephen L. Saxl
William A. Wargo
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

José A. Isasi, II
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 2500
Chicago, IL 60601

/s/ James J. Frost