UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHYSICIANS MUTUAL INSURANCE COMPANY and ) CIVIL ACTION
PHYSICIANS LIFE INSURANCE COMPANY, ) NO. 07 CV 10490 (NRB)
 )
                        Plaintiffs, )
 )
            v. )
 )
GREYSTONE SERVICING CORPORATION, INC., )
GREYSTONE & CO., INC., STEPHEN ROSENBERG )
ROBERT R. BAROLAK, and CURTIS A POLLOCK, )
 )
                        Defendants. )
-----------------------------------------------------------------X

### DEFENDANTS' REPLY MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION TO STAY

        Stephen L. Saxl
        William A. Wargo
        GREENBERG TRAURIG, LLP
        200 Park Avenue
        New York, New York 10166
        (212) 801-9200

        and

        José A. Isasi, II
        GREENBERG TRAURIG, LLP
        77 W. Wacker Drive
        Suite 2500
        Chicago, IL 60601
        (312) 456-8400

        *Attorneys for Defendants Greystone*
        *Servicing Corporation, Inc., Greystone &*
        *Co., Inc., Stephen Rosenberg, Robert R.*
        *Barolak and Curtis A. Pollock*

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT .................................................................................................................. 2

    A.   Despite Plaintiffs' Attempts To Recast Their Damages and Claims In This Suit, The Losses Sought Here Are The Same As Those In The Asset Allocation litigation. ................................................................................................ 2

    B.   The Weight of Legal Authority, Including Those Cited by Plaintiffs, Support A Stay When The Outcome Of Another Proceeding Will "Bear Upon" This Case. ..... 5

III.  CONCLUSION ............................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Acacia Villa v. United States*
    24 Cl Ct. 445 (1991) .................................................................................................. 6

*American Steamship Owners Mut. Protection and Indem. Assoc., Inc. v. LaFarge North America, Inc.*
    474 F. Supp. 2d 474 (S.D. N.Y. 2007) ........................................................................ 7

*FTC v. QT, Inc.*, 236 F.R.D.
    402 (N.D. Ill. 2006) ..................................................................................................... 6

*Hicks v. City of New York*
    286 F. Supp. 2d 238 (E.D.N.Y. 2003) ........................................................................ 7

*Inn Chu Trading Co., Ltd. v. Sara Lee Corp.*
    810 F. Supp. 501 (S.D.N.Y. 1992) .............................................................................. 7

*John's Installation, Inc. v. Ciska Construction Co., Inc.*
    671 F. Supp. 289 (S.D.N.Y. 1987) ............................................................................. 7

*LaSala v. Needham & Co., Inc.*
    399 F. Supp. 2d 421 (S.D.N.Y. 2005) ........................................................................ 5

*Leyva v. Certified Grocers of California, Ltd.*
    593 F.2d 857 (9th Cir. 1979) ...................................................................................... 5

*Ofosu v. McElroy*
    98 F.3d 694 (2nd Cir. 1996) ....................................................................................... 8

*Rogers v. Desiderio*
    58 F.3d 299 (7th Cir. 1995) ........................................................................................ 6

*Simonsen v. Chicago Board of Elections*
    115 Fed. Appx. 887 (7th Cir. 2004) ........................................................................... 6

*U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*
    811 F. Supp. 802 (E.D.N.Y. 1992) ......................................................................... 8, 9

*Wederman v. Liberty Ventures, LLC*
    857 N.E.2d 320 (Ill. App. Ct. 2006)........................................................................... 6

**State Cases**

*Ballweg v. City of Springfield*
    499 N.E. 2d 1373 (Ill. 1986)..................................................................................... 6

## I. INTRODUCTION.

In the Defendants' Motion to Stay, the Defendants argue in favor of this Court exercising its discretion and granting a stay of these proceedings pending the resolution of the appeal in *Physicians Mutual Insurance Company and Physicians Life Insurance Company v. Asset Allocation and Management Company, LLC*, Appeal No. 07-3523 (7th Cir. 2007) (the "Asset Allocation appeal"). The Defendants argue that resolution of that appeal, which involves the same Plaintiffs as the present case, the same Participation Interests held by Plaintiffs in certain mortgage pools and the same operative facts (Physicians' claim that they are entitled to damages due to the alleged wrongful deprivation of the principal and interest payments from those mortgage pools) should be stayed. Because of the potential preclusive effect of the Seventh Circuit's affirmance of Judge Conlon's Opinion granting summary judgment against Physicians, Defendants argue the Asset Allocation appeal has a bearing on the present case. When balancing the competing interests, a stay is warranted.

In Plaintiff's [sic] Memorandum of Law and Opposition to Motion to Stay (hereinafter "Plaintiffs' Opposition" or "Opp.") Physicians did not challenge the accuracy of any of the facts outlined by the Defendants or the legal standards which Defendants apply to those facts to argue in favor of a stay. Instead, Plaintiffs attempt to severely limit the scope and rationale of Judge Conlon's Opinion, and re-imagine their own Complaint in an attempt to recast the damages they claim to be seeking in this litigation. When Judge Conlon's Opinion is correctly assessed and the damages which Plaintiffs are seeking <u>as described in their own Complaint</u> are reviewed, it is clear the losses Physicians seeks in this case are the same losses and arise from the same transactions as those complained of in the Asset Allocation litigation. Because the resolution of the Asset Allocation appeal will bear on this case, Defendants request that the Court stay this action pending that appeal.

1

## II.    **ARGUMENT.**

A.    **Despite Plaintiffs' Attempts To Recast Their Damages And Claims In This Suit, The Losses Sought Here Are The Same As Those In The Asset Allocation litigation.**

In an attempt to circumvent the potential application of collateral estoppel, Plaintiffs try to narrow Judge Conlon's Opinion and try to recast the type of losses they are claiming for the alleged improper redemptions of Plaintiffs' Participation Interests in the Loan Pools. Plaintiffs narrowly interpret Judge Conlon's Opinion, arguing that Judge Conlon found only that Physicians already recovered for any alleged overpayment for the Participation Interest as well as any loss of income; and that Physicians is not also entitled to their claim for reinvestment losses because such damages after the call date of the loans were speculative and unrecoverable. (Opp. at 8). These holdings are just part, although important parts, of Judge Conlon's Opinion. A complete review of her Opinion shows Judge Conlon was confronted with claims striking similar to those presented to this Court.

Physicians claimed in the Asset Allocation litigation that due to their investment advisor's negligence, breach of fiduciary duty, breach of contract and fraud in advising Physicians regarding the true prepayment nature of the mortgage loans, Physicians suffered losses <u>above</u> the payout of their participating interests at par value plus the annualized yield return of between 5.83 and 6.22 percent. (*See* Ex. C to Declaration of José A. Isasi, II in Support of Motion to Stay, Opinion at 1, 3-4). Judge Conlon segregated these claimed additional losses as three different theories: (1) an overpayment on the original investments; (2) lost income on the lost overpayment; and (3) lost income on alternative yields that could have been realized if the investments remained intact. (*Id.*, at 10).

Judge Conlon summarized the parties' arguments on damages as follows. Asset Allocation contended that Physicians profited from the investments and, therefore, Physicians' claim for additional benefit-of-the-bargain/expectation damages were unrecoverable on any of the tort and contract theories. Physicians, on the other hand, argued that their losses were not benefit-of-the-

2

bargain/expectation damages, but rather losses from overpaying on the premiums and loss of income due to the premature call of the investments. As detailed below, Judge Conlon agreed that Physicians' claim failed because "they have not suffered any net damages." (*Id.*, Opinion at 8).

Focusing on the fraud claim, Judge Conlon found that each of Physicians' claimed "losses" failed as a matter of law, holding.

(i) Physicians is not entitled to any overpayment because loss of excess premium is not a compensable loss, but rather Physicians would be entitled to the purchase price of the loans, which they received back plus interest. (*Id*, Opinion at 11).

(ii) Physicians is not entitled to any lost income from the alleged overpayment because: (a) any amount Physicians could have realized up to the call date was recovered in the profits returned on the entire value of the investments. (*Id.*, Opinion at 11-12); and (b) any income lost on the alleged overpayment after the call date is speculative because earnings were not guaranteed after the call date. (*Id.*, Opinion at 12).

(iii) Likewise, Physicians' claim that they are entitled to other lost income from the premature call of the investments as "consequential loss resulting from having to reinvest its returned principal at lower prevailing rates," because the investments were intended to be "long term and provide a cash flow to the maturity date of each of the underlying loans," is not compensable nor a consequential loss because the early call was contemplated by Physicians or otherwise speculative. (*Id.*, Opinion at 13-14).

(iv) Physicians have not suffered an actual loss on their other claims of negligence, breach of contract and breach of fiduciary because such claims limit damages to out of pocket losses and the facts and injury are based on the fraud claim. (*Id.*, Opinion at 14-15).

In Plaintiffs' Opposition, they claim they are not seeking the same damages rejected by Judge Conlon, but rather that they are seeking to recover the principal and interest payments that were actually made by the borrowers under the terms of the mortgage notes. (Opp. at 10). This re-imagining of Plaintiffs' damages contradicts or embellishes the actual allegations in the complaint, which sound strikingly similar to the same types of damages they sought in the case before Judge Conlon:

> As a result of the fraudulent redemptions . . . Physicians was deprived of its right to receive further payments under the terms of the high interest rate mortgage notes in each of the Loan Pools which would and/or should have continued to the stated maturity dates of each loan. ***Physicians was forced to reinvest the returned par value at interest rates substantially lower than the higher interest rates of the***

3

> *underlying loans and suffered losses which will continue through the maturity dates of each loan.* Due to and/or as a result of the unlawful conduct of the Defendants, Physicians suffered economic losses in an amount presently undetermined, but not less than $14,167,327.

(Ex. A to Isasi Declaration in Support of Defendants Motion to Stay, Amend. Compl. ¶ 27) (Emphasis added). These damages — the ones actually sought in the Complaint — for lost reinvestment income are *identical* to the lost reinvestment income Plaintiffs sought against Asset Allocation and which were rejected by Judge Conlon. (Ex. C to Isasi Declaration in Support of Motion to Stay, Opinion at 6, 10 and 13). In addition, during the March 19, 2008 teleconference hearing before this Court, Plaintiffs' counsel conceded upon questioning by the Court that the two lawsuits sought the "same dollars" from both Asset Allocation and the Greystone defendants.[1]

Assuming for argument sake that Plaintiffs' recast claim for damages for guaranteed contractual payments as set forth in their Opposition is what they sought in the complaint, changing what Plaintiffs call these damages does not change what they are. Plaintiffs argue in their Opposition that the claims in the Illinois lawsuit related to the purchase of securities, while the present suit relates to the theft of securities. (Opp. at 6). However, the damages claimed are the same. "[B]y any other name,"[2] these alleged damages/losses are still the same expectancy damages Judge Conlon rejected in the Asset Allocation case. As Judge Conlon stated: "Physicians have not suffered an actual loss on their claims for professional negligence, breach of contract, and breach of fiduciary duty, which are based on the same facts and injury as the fraud claim. Nevertheless, compensable losses under these claims would render the same result." (Ex. C to Isasi Declaration in Support of Motion to Stay, Opinion at 14). If Judge Conlon's opinion is upheld, the same finding that the investments were never guaranteed would equally apply here. Even Plaintiffs concede that

---

[1] Physicians is essentially arguing that they would be entitled to at least $11,390,922 from Asset Allocation and another $14,167,327 from Greystone for the same alleged losses for the same prepaid loans--a double recovery.

[2] William Shakespeare, *Romeo and Juliet*, Act II, Scene II ("What's in a name? That which we call a rose by any other name would smell as sweet.")

4

"there existed prepayment risk in the underlying loans," (Opp. at 9) but then incorrectly conclude, without any authority, that this has no impact on the damages they can recover. In fact, it renders the claim for damages for future payments speculative and unrecoverable. As Judge Conlon made clear on any of the causes of action, whether it be one of tort or contract, Plaintiffs received their entire purchase price plus made a profit on the investment.

**B.     The Weight of Legal Authority, Including Those Cited by Plaintiffs, Support A Stay When The Outcome Of Another Proceeding Will "Bear Upon" This Case.**

Striking in its absence from Plaintiffs' Opposition is <u>any</u> attempt by Physicians to distinguish <u>any</u> of the legal authorities cited by the Defendants in their Motion to Stay. Instead, Plaintiffs try to ignore this authority and cites their own authority (which the Court will find to be inapplicable, distinguishable, or actually supporting Defendants' Motion), thereby conceding that the Defendants' authorities support their argument.

Plaintiffs do not challenge and therefore concede Defendants' argument that this Court need not determine with complete certainty that collateral estoppel will attach to Physicians' claims in this case should Judge Conlon's Opinion be affirmed in order to enter a stay. Indeed, one of the decisions relied upon by Plaintiffs at page 13 of their Opposition stands for the proposition that "a court might, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings <u>are not necessarily controlling of the action to be stayed</u>." See *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). *See also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("[a] trial court may, with propriety, find it is efficient . . . to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule ... does not require that the issues in such proceedings are necessarily controlling of the action before the court."), *cited with approval in LaSala*, 399 F. Supp. 2d at 427, n. 40. Thus, all this Court need conclude to support the

5

entry of the requested stay is that if Judge Conlon's Opinion is affirmed, it will "bear upon," or potentially impact, the present case.

While Plaintiffs continue their half-hearted argument that Judge Conlon's Opinion is a "final" judgment for the purposes of collateral estoppel, they have apparently now conceded that Illinois, and not New York, law controls this question. They cite to one decision, *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) which they claims suggests some "confusion" concerning at what procedural stage a judgment is "final." (Opp. at 5, n. 7.) There is no confusion in this area. The Illinois Supreme Court decision in *Ballweg v. City of Springfield*, 499 N.E. 2d 1373, 1375 (Ill. 1986) unambiguously established that the pendency of an appeal prevents a judgment from being "final" for collateral estoppel purposes Numerous decisions handed down since *Ballweg* have confirmed this. *See e.g. FTC v. QT, Inc.*, 236 F.R.D. 402, 404 (N.D. Ill. 2006); *Wederman v. Liberty Ventures, LLC*, 857 N.E.2d 320, 326 (Ill. App. Ct. 2006). Even Judge Easterbrook, who authored the *Rogers* decision relied upon by Plaintiffs to suggest that there is "confusion" on when a judgment is final, is not "confused" by this question. In the unpublished decision in *Simonsen v. Chicago Board of Elections* 115 Fed. Appx. 887 (7th Cir. 2004), Judge Easterbrook joined in an order which stated that in the *Ballweg*, "[t]he [Illinois] supreme court has held that the filing of an appeal in the intermediate appellate court suspends the collateral estoppel effect of a circuit court's judgment." *Simonsen* 115 Fed. App. at 890.[3] It is worth noting that in the *Rogers* case, relied upon by Plaintiffs, the Seventh Circuit remanded with instruction <u>to stay</u> the case pending the decision by the Illinois appellate court on a related case.[4]

---

[3] A copy of this unpublished decision is attached at Exhibit 1 to the Declaration of José A. Isasi, II in support of Defendants Reply in Support of Motion to Stay.

[4] Plaintiffs cite *Acacia Villa v. United States*, 24 Cl Ct. 445 (1991) for the proposition that a stay of an action in the U.S. Court of Claims would be "inefficient" without first considering the question of whether a prior decision by a U.S. District Court constituted collateral estoppel for the issues litigated in the Claims Court. The critical distinction, however, in *Acacia Villa* is that the question decided by the District Court was a question of federal law and the other decision was "final." *Id.* at 447-48. These critical distinguishing characteristics render *Acacia Villa* inapposite here.

6

None of the other authorities cited by Plaintiffs support the denial of Defendants' Motion to Stay. Plaintiffs cite *Hicks v. City of New York*, 286 F. Supp. 2d 238 (E.D.N.Y. 2003), *Inn Chu Trading Co., Ltd. v. Sara Lee Corp.* 810 F. Supp. 501(S.D.N.Y. 1992) and *John's Installation, Inc. v. Ciska Construction Co., Inc.,* 671 F. Supp. 289 (S.D.N.Y. 1987) for the uncontroversial (and uncontested) propositions that the movant bears the burden of establishing that the circumstances exists to justify the entry of a stay. (Opp. at 10.) Plaintiffs also rely upon *American Steamship Owners Mutual Protection and Indem. Assoc., Inc. v. LaFarge North America , Inc.* 474 F. Supp. 2d 474 (S.D. N.Y. 2007) to set out the legal standard for entry of a stay, yet the standard in that case is identical to the standard identified by the Defendants in their Memorandum of Law in Support of Motion to Stay. (Opp. at 11; *compare with* Defendants' Memorandum at 13.)

Turning to Plaintiffs' argument applying the five factors to consider for a stay, Plaintiffs principally argue that they have "a right to a expeditious resolution" of this litigation. Despite admitting they waited more than six months from the date they claim to have "discovered" Defendants' alleged wrongful conduct to serve a complaint on the Defendants, and an additional five months to perfect their Complaint by filing of the First Amended Complaint, Plaintiffs nevertheless argue they have been diligent. Defendants maintain the facts demonstrate otherwise. Plaintiffs cannot be heard to complain that they have an interest in expeditiously pursuing their claims against Defendants when, for reasons within their own control, Physicians took nearly one year after purportedly "discovering" the Defendants' conduct to file their First Amended Complaint.

Plaintiffs also for the first time offer a belated argument that they are prejudiced by a stay. Plaintiffs' sole support for this argument is the hypothetical example that a stay would prevent them from conducting discovery from third parties such as USGI, which they claim were involved in circular transactions with the Defendants. (Opp. at 12.) Plaintiffs further claim that the absence of this discovery prevents them from determining if USGI was a party to the alleged conversion of

7

Physicians' Participation Interests. (*Id.*) What Plaintiffs omit from their argument is that they had the opportunity to conduct discovery directed at USGI and other third parties during the pendency of the Asset Allocation litigation, and in fact, did so. Physicians served a subpoena for documents on USGI in the Asset Allocation litigation, which produced hundreds of pages in response. *See,* Declaration of José A. Isasi in Support of Reply Memorandum in Support of Motion to Stay at Exhibit 2 and ¶ 4. In addition, among the thousands of pages of documents produced by Greystone Servicing Corporation, Inc. and Greystone Funding Corporation in the Asset Allocation litigation were numerous documents transmitted to and from USGI. Plaintiffs have already had an opportunity to conduct discovery on third parties and availed themselves of that opportunity in several instances. Thus, any claimed prejudice is either illusory or was avoidable.

Plaintiffs make light of the Defendants' interests, which clearly weigh in favor of a stay. First, Plaintiffs argue that because the Defendants "are wrongdoers," they are not in a position to seek a stay.[5] This argument is made without benefit of citation to any authority, and is nonsensical. If this were in fact the law, no defendant would ever be entitled to seek, much less obtain, a stay of one proceeding pending the outcome of another. Meanwhile, the prejudice to the Defendants in proceeding with this litigation without first awaiting resolution of the Asset Allocation appeal is clear: The parties would engage in litigation of a very complicated commercial transaction, at significant cost and distraction to the Defendants, only to potentially learn that Plaintiffs' entire damages claim is barred by the application of collateral estoppel.

Plaintiffs similarly gloss over this Court's own interests in utilizing scarce judicial resources economically. Plaintiffs cite *U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.* 811 F. Supp. 802 (E.D.N.Y. 1992), for the proposition that stays are to be discouraged. Yet again, the

---

[5] Plaintiffs cite *Ofosu v. McElroy*, 98 F.3d 694 (2nd Cir. 1996) in support of this portion of their argument. However, this case addresses the stay of an order of exclusion against an alien pending an appeal to the Second Circuit, a very different factual setting applying a different legal standard. In any event, the Second Circuit conditionally GRANTED the stay sought by the Petitioner.

8

factual setting and legal issues in that case differ materially from the present case. In *U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, the District Court was confronted with a defendant who was reputed to be a member of the Lucchese crime family, and who sought a stay on briefing of a motion for summary judgment of RICO claims brought by the United States because of pending grand jury investigations of him. *Id.* at 803-04. The defendant sought to avoid having to assert his fifth amendment rights in response to this summary judgment motion. *Id.* at 807-08. In deciding to deny the stay, the District Court relied on a large body of specialized caselaw which held that pre-indictment requests for stays of civil proceedings are generally denied. *Id.* at 805-06. This caselaw is completely inapplicable to the present case. Here, proceeding with a highly contentious lawsuit which the Defendants intend to vigorously defend, when the Seventh Circuit may ultimately render it moot, makes little sense.

Plaintiffs also argue that third parties such as USGI have an interest in having this matter proceed, necessitating denial of the Motion to Stay. (Opp. at 14.) Plaintiffs never explain how, on the one hand, they use USGI as an example of a party they are considering seeking discovery against, yet simultaneously it is in USGI's interests that this litigation proceed. No third party has an interest in being the subject of subpoenas seeking documents and testimony from representatives.

Finally, Physicians incorrectly asserts that this Court has already stayed discovery in this matter based upon Defendants' collateral estoppel argument. (Opp. at 11, n. 8.) Physicians misstates the record on this point. At the conclusion of the March 19, 2008 pre-motion conference on the Defendants' pending request to file a motion to dismiss and motion to stay, the Court itself raised the issue of Plaintiffs' unilateral service of subpoenas and written discovery. The Court indicated to the parties that, having been informed that such discovery had been issued by

9

Plaintiffs, it was ordering that no discovery was to take place until after the resolution of any motion to dismiss. At no time did the Court predicate this order upon a collateral estoppel argument.[6]

### III. CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court enter an order which stays the present case until such time as 1) Plaintiffs have exhausted all appeals of Judge Conlon's September 28, 2007 Memorandum Opinion and Order dismissing the Plaintiffs' suit, or 2) the Seventh Circuit enters an order reversing Judge Conlon's Opinion and remands the case.

Date: June 19, 2008

Respectfully submitted,

GREENBERG TAURIG, LLP

By: /s/ William A. Wargo
    Stephen L. Saxl (SS-1028)
    William A. Wargo (WW-9417)
    200 Park Avenue
    New York, NY 10166
    (212) 801-2100
    (212) 801-6400 (fax)
    saxls@gtlaw.com
    wargow@gtlaw.com

    and

    José A. Isasi, II (*pro hac vice*)
    77 West Wacker Drive
    Suite 2500
    Chicago, IL 60601
    (312)456-8400
    (312)456-8435 (fax)
    isasij@gtlaw.com
    *Attorneys for Defendants Greystone Servicing Corporation, Inc., Greystone & Co., Inc., Stephen Rosenberg, Robert R. Barolak and Curtis A. Pollock*

---

[6] The Court's Order that no discovery take place until after a ruling on a Motion to Dismiss under 12(b)(6) is entirely practicable. As detailed in their January 11, 2008 letter, the Defendants have excellent legal grounds to attack every one of the claims in Plaintiffs' First Amended Complaint. If this Court denies the Motion to Stay, Defendants will move to dismiss the complaint with prejudice in its entirety. However, given the potential application of collateral estoppel, there is no reason to engage in separate briefing on these issues, which may be entirely moot due to collateral estoppel.