UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

PHYSICIANS MUTUAL INSURANCE COMPANY and )    **CIVIL ACTION**
PHYSICIANS LIFE INSURANCE COMPANY,          )    **NO. 07 CV 10490 (NRB)**
                                       )

             Plaintiffs,           )

                                       )

     v.                         )

                                     )

**GREYSTONE SERVICING CORPORATION, INC.,**   )
**GREYSTONE & CO., INC., STEPHEN ROSENBERG** )
**ROBERT R. BAROLAK, and CURTIS A POLLOCK,**   )
                                     )

             Defendants.        )

----------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM
### OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
### PLAINTIFFS' FIRST AMENDED COMPLAINT

 

GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200

GREENBERG TRAURIG, LLP
77 W. Wacker Drive
Suite 2500
Chicago, IL 60601
(312) 456-8400

*Attorneys for Defendants Greystone*
*Servicing Corporation, Inc., Greystone &*
*Co., Inc., Stephen Rosenberg, Robert R.*
*Barolak and Curtis A. Pollock*

Of Counsel:
   José A. Isasi, II
   Stephen L. Saxl
   William A. Wargo

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.    All Of Plaintiffs' Causes of Action Beyond Breach Of Contract Are Duplicative
      Of That Claim And Should Be Dismissed ........................................................................ 4

      A.    Plaintiffs' Tort Based Claims are Duplicative of Their Contract Claim ............... 4

      B.    Plaintiffs' Quasi-Contractual or Equitable Claims are Also Duplicative ............. 8

      C.    Plaintiffs Cannot Preserve Their Duplicative Counts Using An Alternative
            Pleading Argument .............................................................................................. 10

II.   The Losses Plaintiffs Seek Are Unrecoverable As A Matter Of Law ............................ 11

      A.    Plaintiffs Cannot Recover Lost Profits Under Their Fraud Cause of Action .......... 11

      B.    Plaintiffs' Tort Claims Sound In Fraud And Therefore They Cannot Seek
            Lost Profits or Expectancy Damages ................................................................... 13

      C.    Under New York Law, Lost Profits Are Unrecoverable Under The RICO,
            Breach Of Implied Covenant And Conversion Counts Pled By Plaintiffs ............ 14

            1.    RICO ......................................................................................................... 15

            2.    Breach of Implied Covenant ..................................................................... 17

            3.    Conversion ................................................................................................ 17

III.  Plaintiffs' Causes of Action Related to Breach of Fiduciary Duty
      (Counts III & IV), Conversion And RICO Were Not Timely Brought And Are
      Barred By The Applicable Statutes of Limitations ........................................................ 18

IV.   All Of The Plaintiffs' Causes of Action Should Individually Be Dismissed Due
      To Specific Legal Defects .............................................................................................. 20

      A.    Breach of Contract .............................................................................................. 20

      B.    Breach of Implied Covenant of Good Faith and Fair Dealing ............................ 21

      C.    Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary
            Duty ..................................................................................................................... 21

      D.    Conversion .......................................................................................................... 23

E.    Fraud ...................................................................................................................... 24

F.    Constructive Trust ................................................................................................. 25

G.    RICO ...................................................................................................................... 25

CONCLUSION ............................................................................................................................ 30

# TABLE OF AUTHORITIES

## Federal Cases

*Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.,*
  No. 90 CIV 1052, 1992 WL 73473 (S.D.N.Y. Apr. 1, 1992) ....................................................... 16

*AD Rendon Communications., Inc. v. Lumina Americas, Inc.,*
  No. 04-CV-8832, 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007)................................................. 4, 6

*AFA Protective Systems, Inc. v. American Tel. & Tel. Co., Inc.,*
  57 N.Y.2d 912, 442 N.E.2d 1268, 456 N.Y.S.2d 757 (N.Y. 1982)............................................... 14

*Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.,*
  No. 04-CV-2985, 2007 WL 201167 (E.D.N.Y. Jan. 23, 2007)...................................................... 17

*Atla-Medine v. Crompton Corp.,*
  No. 00 CIV 5901, 2001 WL 428249 (S.D.N.Y. April 26, 2001) ................................................... 10

*Bartang Bank & Trust Co. v. Caiola,*
  No. 04 CIV 2402, 2006 WL 2708453 (S.D. N.Y. September 18, 2006) ........................................ 19

*Boley v. Pineloch Assocs., Ltd.,*
  700 F. Supp. 673 (S.D. N.Y. 1988) ............................................................................................... 22

*Bolt Elec. Inc. v. City of New York,*
  53 F.3d 465 (2d Cir. 1995)............................................................................................................... 3

*Briggs v. Goodyear Tire & Rubber Co.,*
  79 F. Supp. 2d 228 (W.D.N.Y. 1999)............................................................................................... 9

*Brown v. Stinson,*
  821 F. Supp. 910 (S.D.N.Y. 1993) ................................................................................................ 12

*Camp Summit of Summitville, Inc. v. Visinski,*
  No. 06 CV 4994, 2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)..................................................... 8

*Caytas v. Maruszak,*
  No. 06 CIV 985, 2007 WL 2456956 (S.D.N.Y. 2007) .................................................................. 30

*Chang v. Gordon,*
  No. 96 CIV 0152, 1997 WL 563288 (S.D. N.Y. Sept. 8, 1997) ................................................... 23

*Cohen v. Elephant Wireless, Inc.,*
  No. 03 CIV 4058, 2004 WL 1872421 (S.D.N.Y. Aug. 19, 2004)................................................... 9

*Commercial Cleaning Servs., LLC  v. Colin Serv. Sys., Inc.,*
  271 F.3d 374 (2d Cir. 2001)........................................................................................................... 15

*Commercial Union Assur. Co. plc v. Milken,*
  17 F.3d 608 (2d Cir. 1994), *cert. denied*, 513 U.S. 873, 115 S. Ct. 198 (1994) ...................... 15, 16

*Cooper v. Parsky,*
  140 F.3d 433 (2d Cir. 1998) .................... ............................................................... 19

*Discon, Inc. v. NYNEX Corp.,*
  93 F.3d 1055 (2d Cir. 1996), *cert. denied* 522 U.S. 809, 118 S.Ct. 49 (1997) .............................. 29

*Disher v. Information Resources, Inc.*
  691 F.Supp. 75 (N.D.Ill. 1988), *aff'd*, 873 F.2d 136 (7th Cir. 1989) ............................................ 11

*Druyan v. Jagger,*
  508 F. Supp. 2d 228 (S.D.N.Y. 2007) ........................................................................................ 6

*Fantis Foods, Inc. v. Standard Importing Co.*
  49 N.Y.2d 317, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783 (N.Y. 1980) ........................................ 17

*First Nationwide Bank v. Gelt Funding Corp.,*
  27 F.3d 763 (2d Cir. 1994), *cert. denied* 513 U.S. 1079, 115 S. Ct. 728 (1995) ............... 11, 12, 16

*First Nationwide Bank v. Gelt Funding, Corp.,*
  820 F. Supp. 89 (S.D.N.Y. 1989), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ....................................... 13, 14

*Fitzgerald v. Chrysler Corp.,*
  116 F.3d 225 (7th Cir. 1997) ..................................................................................................... 27

*Friedlander v. Rhoades,*
  962 F. Supp. 428 (S.D.N.Y. 1997) ...................................................................................... 27, 29

*GICC Capital Corp. v. Technology Finance Group,*
  67 F.3d 463 (2d Cir. 1995) ........................................................................................................ 28

*Great White Bear, LLC v. Mervyns, LLC,*
  No. 06 CIV 13358, 2007 WL 1295747 (S.D.N.Y. April 26, 2007) ............................................... 8

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
  492 U.S. 229, 109 S.Ct. 2893 (1989)............................................................................... 27, 28, 29

*Henkind v. Brauser,*
  No. 87 Civ. 4072, 1989 WL 54109 (S.D.N.Y. May 17, 1989) ...................................................... 16

*In re Adelphia Comms. Corp.,*
  342 B.R. 142 (Bankr. S.D.N.Y. 2006)................................................................................... 11, 12

*Ixe Banco, S.A. v. MBNA America Bank, N.A.,*
  No. 07 CIV 0432, 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008)....................................................... 6

iv

*Jacobson v. Cooper,*
   882 F.2d 717 (2d Cir. 1989) ........................................................................................................28

*Katzman v. Victoria's Secret Catalogue,*
   167 F.R.D. 649 (S.D.N.Y. 1996) .................................................................................................29

*LCO Destiny, LLC v. Michaels Stores, Inc.,*
   543 F. Supp. 2d 129 (N.D.N.Y. 2008) ........................................................................................10

*Luce v. Edelstein,*
   802 F.2d 49 (2d Cir. 1986) ..........................................................................................................24

*Maxus Leasing Group, Inc. v. Kobelco American, Inc.,*
   No. 5:04-CV-518, 2007 WL 655779 (N.D.N.Y. Feb. 26, 2007) ............................................5, 10

*Mayfield v. General Electric Capital Corp.,*
   No. 97 CIV 2786, 1999 WL 182586 (S.D.N.Y. Mar. 31, 1999) ..................................................27

*McCormack Intern. Corp. v. Vohra,*
   858 F. Supp. 415 (S.D.N.Y. 1994) ..............................................................................................29

*McLaughlin v. American Tobacco Co.,*
   552 F.3d 215 (2d Cir. 2008) ........................................................................................................15

*Meadowbrook - Richman, Inc. v. Associated Fin. Corp.,*
   325 F. Supp. 2d 341 (S.D.N.Y. 2004) .....................................................................................19, 20

*Meriden Intern. Bank Ltd. v. Government of the Republic of Liberia,*
   23 F. Supp. 2d 439 (S.D.N.Y. 1998) ...........................................................................................19

*Metromedia Co. v. Fugazy,*
   983 F.2d 350 (2d Cir. 1992), *cert. denied* 508 U.S. 952, 113 S. Ct. 2445 (1993) .........................28

*Novak v. Scarborough Alliance Corp.,*
   481 F. Supp. 2d 289 (S.D.N.Y. 2007) .........................................................................................21

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.,*
   497 F. Supp. 2d 541 (S.D.N.Y. 2007) .......................................................................................9, 10

*Peabody v. Weider Publications, Inc.,*
   260 Fed.Appx. 380, 2008 WL 145507 (2d Cir. Jan. 16, 2008) .....................................................9

*Pena v. Guzman,*
   No. 03 CIV 5120, 2004 WL 253331 (S.D.N.Y. February 11, 2004) ...........................................25

*PG 1044 Madison Assocs., LLC v. Sirene One, L.L.C.,*
   369 F. Supp. 2d 512 (S.D.N.Y. 2005) ..........................................................................................17

*Physicians Mut. Ins. Co. v. Asset Allocation and Mgmt. Co., LLC,*
No. 06 C 5124, 2007 WL 2875237 (N.D.Ill. Sept. 28, 2007), case dismissed Aug. 18, 2008 .........3

*Pittston Warehouse Corp. v. American Motorists Ins. Co.,*
No. 88 CIV 6238, 1991 WL 95035 (S.D.N.Y. May 23, 1991) .......................................17

*Polychronis Liaros v. Vaillant,*
No. 93 CIV 2170, 1998 WL 20001 (S.D.N.Y. 1998) ...........................................12, 13

*Rolls-Royce Motors Cars, Inc. v. Schudroff,*
929 F. Supp. 117 (S.D.N.Y. 1996) ................................................................6

*Rombach v. Chang,*
355 F.3d 164 (2d Cir. 2004) .....................................................................4

*Rotella v. Wood,*
528 U.S. 549, 120 S.Ct. 1075 (2000) ...........................................................19

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
473 U.S. 479, 105 S.Ct. 3292 (1985) .......................................................15, 26

*Solutia, Inc. v. FMC Corp.,*
456 F. Supp. 2d 429 (S.D.N.Y. 2006) ............................................................11

*Spanierman Gallery, PSP v. Love,*
No. 03 CIV 3188, 2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003) ...................................6, 9

*Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.,*
383 F. Supp. 2d 428 (S.D.N.Y. 2003) ...........................................................13

*Three Crown Ltd. P'ship v. Salomon Bros., Inc.,*
906 F. Supp. 876 (S.D.N.Y. 1995) ..............................................................11

*Travellers Intern., A.G. v. Trans World Airlines, Inc.,*
41 F.3d 1570 (2d Cir. 1994) ...................................................................17

*U.S. Network Servs., Inc. v. Frontier Communications of the West, Inc.,*
155 F. Supp. 2d 353 (W.D.N.Y. 2000) .............................................................6

*Vicon Fiber Optics Corp. v. Scrivo,*
201 F. Supp. 2d 216 (S.D.N.Y. 2002) ...........................................................29

*Walker v. City of New York,*
974 F.2d 293 (2d Cir. 1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387 (1993) ................3

*Windows Headquarters, Inc. v. MAI Basic Four, Inc.,*
Nos. 91 CIV 1816, 92 CIV 5283, 1993 WL 312899 (S.D.N.Y. Aug. 12, 1993) ........................22

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
   341 F. Supp. 2d 258 (S.D.N.Y. 2004)..................................................9

*Yellow Bus Lines v. Drives, Chauffeurs & Helpers Local Union 639,*
   883 F.2d 132 (D.C. Cir. 1989), *cert. denied,* 501 U.S. 1222 (1991)..............26

**State Cases**

*Ashley MRI Management Corp. v. Perkes, 12 Misc.3d 1185(A),*
   824 N.Y.S.2d 760, 2006 N.Y. Slip Op. 51447(U) (N.Y. Sup. 2006)..............9

*Black Car and Livery Ins., Inc. v. H&W Brokerage, Inc.,*
   28 A.D.3d 595, 813 N.Y.S.2d 138, 751 (N.Y.A.D. 2d Dept. 2006)..............21

*Bullmore v. Ernst & Young Cayman Islands,*
   45 A.D.3d 461, 846 N.Y.S.2d 145 (N.Y.A.D 1st Dept. 2000)...................23

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.,*
   70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (N.Y. 1987)................9

*D'Amico v. First Union Nat. Bank,*
   285 A.D.2d 166, 728 N.Y.S.2d 146 (N.Y.A.D. 1st Dept. 2001)...............19

*Gerdes v. Reynolds,*
   30 N.Y.S.2d 755 (N.Y.Sup. 1941)...........................................17

*Knect v. Nassau County Native Americans,*
   41 A.D.3d 435, 837 N.Y.S.2d 717 (N.Y.A.D. 2d Dept. 2007)..................21

*Lama Holding Co. v. Smith Barney Inc.,*
   668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996)..............................11

*Morgan v. A.O. Smith Corp.,*
   265 A.D.2d 536, 697 N.Y.S.2d 152 (N.Y.A.D. 2 Dept. 1999)...................6

*Reade v. SL Green Operating Partnership, LP,*
   30 A.D.3d 189, 817 N.Y.S.2d 230 (N.Y.A.D. 1st Dept. 2006)..................4

*William Kaufman Organization, Ltd. v. Graham & James LLP,*
   269 A.D.2d 171, 703 N.Y.S.2d 439 (N.Y.A.D. 1st Dept. 2000)..................6

**Federal Statutes**

18 U.S.C. § 1961(3)..........................................................26

18 U.S.C. § 1962(c)..........................................................25

18 U.S.C. § 1962(d)..........................................................29

18 U.S.C. § 1964(c) ................................................................................................................ 15

**State Statutes**

N.Y. CPLR § 214[3] ............................................................................................................... 19

N.Y. CPLR § 214[4] ............................................................................................................... 19

**Federal Rules**

Fed. R. Civ. P. 8 .................................................................................................................... 10

Fed. R. Civ. P. 9(b) ........................................................................................................ 24, 26

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 3

**Congressional Records**

S. Rep. No. 617, 91st Cong. 1st Sess. 76 (1969). ................................................................. 4

## INTRODUCTION

Plaintiffs Physicians Mutual Insurance Company and Physicians Life Insurance Company ("Plaintiffs") have attempted to convert a simple business dispute into a wide ranging, eight- count complaint. This over-reaching includes unfounded allegations of fraud and racketeering by the Defendants. The eight causes of action pled in the Complaint possess numerous, and in some instances, overlapping deficiencies requiring their dismissal. In this Memorandum, the Defendants will first address several deficiencies that apply to groups of Plaintiffs' causes of action. Section I addresses Plaintiffs' impermissible duplication of their breach of contract claim (Count I) in Counts II-VII. Section II addresses Plaintiffs' causes of action (Counts II-VI and Count VIII) in which Plaintiffs seek damages that New York law has held to be unrecoverable as those causes of action are pled. Section III demonstrates that, under the facts pled by Plaintiffs, Counts III-V and VIII were not timely filed and are barred by the applicable statutes of limitation. Finally, Section V demonstrates the legal defects for all of Plaintiffs' causes of action (Counts I-VIII) that are specific to each of those causes of action. All of Plaintiffs' causes of action are legally deficient, and all should be dismissed.

## STATEMENT OF FACTS

The following allegations are taken from the Plaintiffs' First Amended Complaint and Jury Demand ("Complaint" or "FAC"). Greystone Servicing Corporation, Inc. ("GSC") provides loan servicing for large portfolios of real estate loans, including collecting of mortgage payments and remitting payments to proper parties. (FAC, ¶3.) Greystone & Co. is a financial services company. (*Id.*, ¶4.) The Greystone entities are either organized under the laws of the State of New York, have their principal place of business in New York, New York, or do business in New York. (*Id.*, ¶¶3-4.) Rosenberg, Barolak and Pollock (collectively, "Individual

1

Defendants") all maintain positions and/or hold offices with one or more of these Greystone entities. (*Id.*, ¶¶6-8.)

During 1995 and 1996, Greystone Funding Corporation ("GFC") acquired various mortgage loans issued for the purposes of financing the construction of multi-family, low income housing projects in New York under Section 8 of HUD's Housing Assistance Program. (*Id.* ¶¶14-15.) The various loans at issue, covering several different projects, were grouped into three separate Loan Pools by Greystone.[1] (*Id.*) Also during this same general period, GSC and GFC entered into Pooling and Servicing Agreements ("Servicing Agreements") and issued participation certificates, which granted a beneficial interest in the loans within the Loan Pools. (*Id.*, ¶18.) True and correct copies of each of the Servicing Agreements are attached as Exhibits A-C to the Declaration of José A. Isasi, II in Support of Defendants' Memorandum in Support of Their Motion to Dismiss ("Isasi Decl.") While Plaintiffs' allegations are vague in this regard, they claim to have "invested" in each of three Loan Pools. (*Id.*, ¶ 16.) These investments were acquired with the assistance of Plaintiffs' investment advisor, Asset Allocation and Management Company ("Asset Allocation"). (*Id.*, ¶25.)

Plaintiffs' participation interests in each of the Loan Pools identified below were effectively redeemed on three dates:

| Loan Pool | Redemption Date |
|---|---|
| Greystone 1996-1 | September 25, 2002 |
| Greystone 1995-4 | May 27, 2003 |
| Greystone 1996-6 | May 27, 2003 |

(*Id.*, ¶ 24.) Plaintiffs have admitted that upon redemption, they received the remaining principal balance, or par value of their investment, for each of the underlying loans. (*Id.*, ¶ 27.) Plaintiffs also admit that they received their share of the interest payments attributable to such loans before

---

[1] These Loan Pools were assigned names: Greystone 1995-4, Greystone 1996-1, and Greystone 1996-6.

redemption.[2]  (*Id.*)  Plaintiffs nevertheless claim to have been damaged due in part to being "forced" to reinvest the returned par value at an interest rate lower than the coupon rate of the loans.  (*Id.*)

Plaintiffs claim they did not understand the basis of these redemptions, and on their behalf, Asset Allocation conducted an investigation. (*Id.*, ¶25.)  This investigation began, according to Plaintiffs "[a]t or around the time of the redemption of Physicians' interests in the Loan Pools,"-- in other words, beginning on or about September 2002.  (*Id.*)  The latest date of the investigation provided by Plaintiffs in the Complaint was May 16, 2003, the date of a response by an alleged representative of Greystone & Co. to Asset Allocation.  (*Id.*)  At that time, Plaintiffs were advised by that representative that the underlying loans had been prepaid, allegedly in connection with the restructuring of the loans under HUD's Mark-to-Market Program.  (*Id.*)

## ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), this Court should accept as true the <u>factual allegations</u> in the complaint and draw reasonable inferences in favor of the plaintiff. *Bolt Elec. Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995) (emphasis added).  Courts will grant such a motion if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir. 1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387 (1993).  When considering a Rule 12(b)(6) motion, the

---

[2] This Court should note that Judge Suzanne B. Conlon of the Northern District of Illinois in her Memorandum Opinion in the related *Physicians Mutual v. Asset Allocation* litigation, lists annualized returns received by Plaintiffs for their investments in the Loan Pools of between 5.83% and 6.22% which surpassed treasury security yields during the same time period. *See Physicians Mut. Ins. Co. v. Asset Allocation and Mgmt. Co., LLC,* No. 06 C 5124, 2007 WL 2875237, at * 2 (N.D.Ill. Sept. 28, 2007), case dismissed August 18, 2008..

3

Court may consider any written instrument or documents incorporated by reference into the complaint. *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).

## I.    All Of Plaintiffs' Causes of Action Beyond Breach Of Contract Are Duplicative Of That Claim And Should Be Dismissed.

In Plaintiffs' Breach of Contact Count (Count I), Plaintiffs alleges that GSC, and the other Defendants as agents of GSC, breached each of the Servicing Agreements by unlawfully redeeming the participation interests without the loans being prepaid or refinanced. (FAC, ¶¶ 18, 30). Plaintiffs, however, have brought a series of tort-based or quasi-contractual claims arising from the same allegedly wrongful acts which seek the very same damages sought in Count I. In each of the eight counts brought against the Defendants, Plaintiffs seek damages "in at least the sum of $14,167,327.00." (*See* FAC, ¶¶ 32, 38, 42, 48, 52, 59, and 75.) Plaintiffs acknowledge in the Complaint that they received the remaining principal balance, or par value, of their beneficial interest in each of the loans and, thus, the remaining principal balance, or par value, of their participation interests in each Loan Pool. (FAC, ¶ 27.) They also admit that their alleged losses stem from the loss of "further" payments and being "forced" to reinvest the returned principal balance of their beneficial interest in the underlying loans at lower interest rates. (*Id.*)

### A.    Plaintiffs' Tort-Based Claims are Duplicative of Their Contract Claim.

It is well settled that "a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action, particularly where, as here, both seek identical damages." *AD Rendon Communications., Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832, 2007 WL 2962591, at * 5 (S.D.N.Y. Oct. 10, 2007) (quoting *Reade v. SL Green Operating Partnership, LP*, 30 A.D.3d 189, 817 N.Y.S.2d 230, 231 (N.Y.A.D. 1st Dept. 2006) (dismissing conversion claim as duplicative under Fed. R. Civ. P. 12(b)(6)). Another District Court crystallized the New York law well, holding, "a tort cause of

4

action does not lie where it is duplicative of a claim sounding in contract: the plaintiff must assert that the defendant breached a duty independent of the claimed contract." *Maxus Leasing Group, Inc. v. Kobelco American, Inc.*, No. 5:04-CV-518, 2007 WL 655779, at * 4 (N.D.N.Y. Feb. 26, 2007) (dismissing on summary judgment claims for fraud and conversion as identical to the breach-of-warranty cause of action, where plaintiff was seeking to recover the identical contractual benefit of the bargain or "purchase price" in each cause of action).

Plaintiffs' claim allegedly arises from GSC's obligations to Plaintiffs as a participant under the Servicing Agreement. Specifically, in the breach of contract count (Count I), Plaintiffs allege that, because there was never a prepayment or refinancing by the borrowers on any of the mortgage loans, Plaintiffs' participation interests in the Loan Pools were unlawfully redeemed and resold in violation of Section 18 of each of the Servicing Agreement. (FAC, ¶¶ 18, 30.) Therefore, Plaintiffs allege that "[t]he acts, actions, commissions, and/or omissions of Greystone constitute a material breach of the Servicing Agreement for each Loan Pool" and claims they suffered "[a]s a direct and proximate result of the breach of the Servicing Agreements . . . damages in at least the sum of $14,167,327.00." (FAC, ¶¶ 18, 32.)

The tort claims alleged by Plaintiffs are merely a duplicative of the contract claim and are all premised on the Defendants' alleged breaching the contract by prematurely redeeming Plaintiffs' participation interests in the Loan Pools. Each tort Count is premised on the Defendants' alleged breach of the Servicing Agreement. Plaintiffs do not allege a legal duty for Defendants independent of GSC's contractual obligations under the Servicing Agreements.

By way of illustration, courts routinely dismiss duplicative tort-based claims on a Rule 12(b)(6) motion or equivalent motion to dismiss:

a.    Fiduciary duty/aiding and abetting (Counts III and IV) -- *see Ixe Banco, S.A. v. MBNA America Bank, N.A.*, No. 07 CIV 0432, 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008) ("Actions for breach of fiduciary duty . . . will not lie when the factual underpinning for the claim is duplicative of a breach of contract claim"); *William Kaufman Organization, Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439 (N.Y.A.D. 1st Dept. 2000) (dismissing a breach of fiduciary duty claim when the conduct that gave rise to the plaintiff's breach of contract claim was also the source of the breach of fiduciary claim).

b.    Conversion (Count V) -- *AD Rendon Comms., Inc.*, 2007 WL 2962591, at *4 ("[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim."); *Rolls-Royce Motors Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996) (conversion claim will "be deemed redundant when damages are merely being sought for breach of contract"); *Spanierman Gallery, PSP v. Love*, No. 03 CIV 3188, 2003 WL 22480055, at *3-4 (S.D.N.Y. Oct. 31, 2003) (dismissing conversion and fraud claims as duplicative of contract claim).

c.    Fraud (Count VI) -- *Druyan v. Jagger*, 508 F. Supp. 2d 228, 240 (S.D.N.Y. 2007) (holding that allegations of intent or concealment that merely relate to defendant's performance of contractual obligations "do not state a claim for fraud under New York law"); *U.S. Network Servs., Inc. v. Frontier Communications of the West, Inc.*, 155 F. Supp. 2d 353, 356 (W.D.N.Y. 2000) (dismissing a misrepresentation claim on a motion to dismiss because "the claim [was] duplicative of plaintiff's contract . . . claims, and seeks the same compensatory damages as those claims); *Morgan v. A.O. Smith Corp.*, 265 A.D.2d 536, 536, 697 N.Y.S.2d 152 (N.Y.A.D. 2d Dept. 1999) ("A cause of action to recover damages for fraud will not lie when the only fraud alleged relates to a breach of contract.").

6

A review of the facts pled in the Complaint demonstrates why this Court should similarly dismiss Plaintiffs' tort claims as duplicative. The breach of fiduciary duty claim (Count III) alleges that: (i) Plaintiffs reposed confidence and trust in GSC to collect and properly remit payments in accordance with the Serving Agreements; (ii) the acts, actions, commissions and/or omissions of GSC in causing the unlawful redemption of Plaintiffs' participation interests in the Loan Pools -- the same redemption alleged in the breach of contract claim -- constitute a breach of fiduciary duty; and (iii) Plaintiffs suffered damages in at least the sum of $14,167,327. (FAC ¶¶ 40-42.) If this Court determines that the fiduciary claim is duplicative of the contract claim, then the aiding and abetting claim (Count IV) should be as well. Plaintiffs claim the same "breach" for the other Defendants, except GSC, as they did for the breach of contract claim as agents, servants, aiders and abettors, co-conspirators and/or alter egos of GSC or each other, and seek the identical damages in at least the sum of $14,167,327. (FAC, ¶¶ 32, 47 and 48.)

Plaintiffs' conversion claim is "[a]s a result of the unlawful redemptions," and Plaintiffs allege that GSC exercised unauthorized control and wrongfully converted their participation interests in the Loan Pools. These allegations mirror the breach of contract claim and seek the same damages "in at least the sum of $14,167,327." (FAC, ¶¶ 51, 52.)

The fraud claim is premised on the Defendants fraudulently concealing that the borrowers had not prepaid and/or refinanced their loans "which led to the unlawful redemption of Physicians' loan participation interests in the Loan Pools." Not surprisingly, Plaintiffs seek damages "in at least the sum of $14,167,327" for their fraud cause of action. (FAC, ¶¶ 57, 59). Plaintiffs, although factually wrong, are alleging that the Defendants concealed or misrepresented the truth that there was no prepayment or refinancing and, therefore, allegedly breached a contractual obligations not to redeem the loans.

7

Therefore, Plaintiffs' tort claims -- Count III (fiduciary duty), Count IV (aiding and abetting a breach of fiduciary duty), Count V (conversion), and Count VI (fraud) -- are merely duplicative of and intertwined with Plaintiffs' breach of contract count.

### B.    Plaintiffs' Quasi-Contractual or Equitable Claims are Also Duplicative.

In addition to the tort-based claims, Plaintiffs' causes of action for breach of the implied covenant of good faith and fair dealing (Count II) and constructive trust (Count VII) are also duplicative of the breach of contract claim and should be dismissed. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is identical to its claim for breach of contract, and both claims seek damages in the same amount of $14,167,327. (*Compare* FAC, ¶¶ 30-32 *with* ¶¶ 34-38). In fact, both counts incorporate the same first 27 paragraphs of the Complaint to comprise the allegations for the respective breach of contract and breach of implied covenant counts. (FAC, ¶¶ 28, 33). Count II, the implied covenant cause of action, incorporates all of the allegations of the breach of contract count. (FAC, ¶ 33).

"[I]f the allegations [in the breach of implied covenant count] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Great White Bear, LLC v. Mervyns, LLC*, No. 06 CIV 13358, 2007 WL 1295747, at *3 (S.D.N.Y. April 26, 2007) (dismissing implied covenant claim under Rule 12(c) motion). *See also Camp Summit of Summitville, Inc. v. Visinski*, No. 06 CV 4994, 2007 WL 1152894, at * 7 (S.D.N.Y. Apr. 16, 2007) (dismissing claim under 12(b)(6), stating that: "It is axiomatic that '[a] contract claim for alleged breach of the implied covenant of good faith and fair dealing is duplicative of a claim for breach of contract and should be dismissed.'"); *Orange County Choppers, Inc. v. Olaes*

8

*Enterprises, Inc.*, 497 F. Supp. 2d 541, at 560-561 (S.D.N.Y. 2007) (holding that Plaintiff's complaint clearly stated a claim for breach of contract which "thus supersede a claim for breach of the covenant of good faith and fair dealing," requiring dismissal of the breach of covenant claim) (citing *Cohen v. Elephant Wireless, Inc.*, No. 03 CIV 4058, 2004 WL 1872421, at *11 (S.D.N.Y. Aug. 19, 2004)). Just recently in the summary judgment context, the Second Circuit held that, when the complaint alleges the same facts for both claims, "it [is] entirely proper under New York law for the District Court to dismiss the good faith and fair dealing claim as duplicative of the breach of contract claim." *Peabody v. Weider Publications, Inc.*, 260 Fed.Appx. 380, 2008 WL 145507, at * 2 (2d Cir. Jan. 16, 2008) (Summary Order).[3]

Count VII for constructive trust fares no better, as it also merely duplicates the breach of contract claim. The "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Spanierman Gallery, PSP*, No. 03 CIV 3188, 2003 WL 22480055, at *4 (quoting *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653 (N.Y. 1987)). *See also Briggs v. Goodyear Tire & Rubber Co.*, 79 F. Supp. 2d 228, 236 (W.D.N.Y. 1999) (dismissing constructive trust claim); *Ashley MRI Management Corp. v. Perkes*, 12 Misc. 3d 1185(A), 824 N.Y.S.2d 760, 2006 N.Y. Slip Op. 51447(U), at *3 (N.Y. Sup. 2006) ("[T]he constructive trust claim is merely duplicative of the breach of contract claim. Plaintiff has failed to plead a distinct harm or wrongful actions giving rise to a claim for a constructive trust.").

---

[3] Although Plaintiffs cited in their pre-motion response letter *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004), where the implied breach was allowed to stand, the vast majority of cases dismiss the implied covenant in a 12(b)(6) motion when it relies on the same exact facts and seek the same exact damages. There is no difference between Count II and Count I in this case.

Plaintiffs' claim here alleges the same wrongful actions arising out of the identical subject matter -- the alleged unlawful and premature redemption of their participation interests in the Loan Pools. (*Compare* FAC ¶ 30 *with* ¶ 63). Accordingly, both the breach of the implied covenant claim (Count II) and the claim for constructive trust (Count VII) are merely claims for the same alleged breach of contract and should be dismissed as duplicative under Rule 12(b)(6).

### C.    Plaintiffs Cannot Preserve Their Duplicative Counts Using An "Alternative Pleading" Argument .

Plaintiffs might argue that they are entitled to plead alternative theories under Rule 8 of the Federal Rules of Civil Procedure. As a matter of law, the alternative pleading rule offers no solace when the tort claim is a duplication of the contract claim. *See, e.g., LCO Destiny, LLC v. Michaels Stores, Inc.*, 543 F. Supp. 2d 129, 133 (N.D.N.Y. 2008) (quoting *Atla-Medine v. Crompton Corp.*, No. 00 CIV 5901, 2001 WL 428249, at *1 (S.D.N.Y. April 26, 2001) ("[T]he alternative pleadings rule does not permit a plaintiff to treat fraud and contract as interchangeable claims, and whether a plaintiff asserts contract claims is immaterial since the fraud claim must stand on its own."); *Orange County Choppers, Inc.,* 497 F. Supp. 2d at 557 ("As with many of its claims, [counter-plaintiff] fixates on its absolute right to plead alternative theories of liability without actually addressing whether its proposed alternative claims have support in the law."); *Maxus*, 2007 WL 655779, at *4, n.12 ("[Plaintiff's] reliance on Rule 8(e) of the Federal Rules of Civil Procedure ... for the proposition that it can plead alternative causes of action, is misplaced. These authorities address pleading potentially inconsistent causes of action, but precedent indicates that these tort causes of action cannot exist at all with a seemingly consistent contract claim based on identical allegations.").

10

## II.    The "Losses" Plaintiffs Seek Are Unrecoverable As A Matter Of Law.

### A.    Plaintiffs Cannot Recover Lost Profits Under Their Fraud Cause of Action.

Plaintiffs' fraud cause of action (Count VI) fails as a matter of law because it seeks

noncompensable damages.  The general rule for damages for fraud is that "the defrauded

plaintiff may recover out-of-pocket losses caused by the fraud." *See First Nationwide Bank v.*

*Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (citing *Disher v. Information Resources,*

*Inc.*, 691 F. Supp. 75, 79 (N.D.Ill. 1988)), *cert. denied,* 513 U.S. 1079, 115 S. Ct. 728 (1995)).

New York law, however, allows plaintiffs in common law fraud action to recover only for actual

pecuniary losses (*i.e.*, out-of-pocket losses and consequential damages), but "not for future

profits." *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, 906 F. Supp. 876, 891 (S.D.N.Y.

1995).  As one Court in this District summarized:

> New York law does not allow a plaintiff to recover expectancy damages in an
> action based in fraud.  "[O]ut-of-pocket rather than benefit-of-the-bargain
> damages are awarded for fraud."  Put differently, "all elements of profit are
> excluded from a computation of damages in an action grounded in fraud."  Thus,
> [plaintiff] is not entitled to receive "benefit of the bargain," or lost profits, as
> damages on its fraud claims.

*Solutia, Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 453 (S.D.N.Y. 2006) (citations omitted);

*accord In re Adelphia Comms. Corp.*, 342 B.R. 142, 157 (Bankr. S.D.N.Y. 2006) ("Damages are

to be calculated to compensate plaintiffs for what they lost because of the fraud, not to

compensate them for what they might have gained . . . Under the out-of-pocket rule, there can be

no recovery of profits which would have been realized in the absence of fraud.") (citing *Lama*

*Holding Co. v. Smith Barney Inc.*, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996)).

In *First Nationwide*, the lender filed a RICO lawsuit premised on fraud, claiming it was

fraudulently induced to make nonrecourse loans.  27 F.3d at 766-67.  The lender claimed two

damages theories:  (1) because the value of the collateral properties was overstated, the lender

11

loaned more than it would have if it had known the true value and was therefore undersecured

for the additional amounts and lost more than it would have lost; and (2) because of fraud, the

lender restricted its use of additional assets to adhere to the federally-mandated level of capital

reserves, which reduced the income it would otherwise have earned if it had loaned out the

restricted funds. *Id.* In addition to the case being dismissed based on deficiencies for a RICO

claim, the Second Circuit set forth guidelines for measuring fraud-type damages:

> In determining fraud damages, any amount recovered ... necessarily reduces the
> damages that can be claimed as a result of the fraud. Because the fraud defendant
> is not liable for all losses that <u>may occur</u>, but only for those <u>actually suffered</u>, only
> after the lender has exhausted the bargained-for remedies available to it can the
> lender assert that it was damaged by the fraud, and then only to the extent of the
> deficiency.

*First Nationwide*, 27 F.3d at 768.[4] (emphasis added).

Plaintiffs argued in their response to Defendants' pre-motion conference letter that "[a]t

this stage of the pleadings, Physicians is required only to allege that it has sustained damages as a

result of Defendants' unlawful conduct." (Isasi Decl. Ex. D, at 2.) The courts, however, have

dismissed claims for damages for fraud in excess of out-of-pocket losses at the motion to dismiss

stage. As the District Court found in *Polychronis Liaros v. Vaillant*, No. 93 CIV 2170, 1998 WL

20001 (S.D.N.Y. 1998):

> Plaintiffs allege that they invested $150,000 . . ., and they claim over $1,000,000
> in damages. [Defendant] moves to dismiss all claims for damages in excess of
> out-of-pocket losses. . . . Despite the nineteenth-century case law plaintiffs cite to
> the contrary, quite clearly plaintiffs can only recover for the amount of money
> they invested as a result of the alleged fraud, together with interest, less any
> amount they recouped from their investment. Accordingly, defendant's motion is

---

[4] *See also In re Adelphia Comms.*, 342 B.R. at 157 (finding that the measure of the bank lenders' damages for misrepresentation would be their out-of-pocket loss – essentially or entirely, their outstanding principal – and not the profits they would have realized in the absence of fraud); *Brown v. Stinson*, 821 F. Supp. 910, 916 (S.D.N.Y. 1993) (client who was defrauded by its personal investment advisor in connection with the purchase of an African mask as an investment could recover the purchase price, but not the additional amounts representing what the client had been told she could expect as return on the investment).

12

granted and all claims for damages for fraud in excess of out-of-pocket losses are dismissed.

No. 93 CIV 2170, 1998 WL 20001, at *3 (S.D.N.Y. 1998) (dismissing pursuant to 12(b)(6)).

*See also Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003):

> The plaintiffs' only allegation of injury in the Amended Complaint is the statement that they have suffered damages as a result of the alleged fraudulent misrepresentations in an amount not less than $500 million. That number presumably reflects the plaintiffs' estimation of the amount they stood to gain if the parties had fulfilled the terms of the ... Agreement, and not their out-of-pocket injury, which would be limited to their $500,000 investment. Those damages representing the amount that the plaintiffs stood to gain if the defendants had completed the terms of the ... Agreement would be recoverable under the breach of contract action but not under the fraud claim.

383 F. Supp. 2d 428, 456-57 (S.D.N.Y. 2003).

Plaintiffs did not suffer any compensable loss to maintain a claim for fraud. As admitted by Plaintiffs, when the loans were "called," they received all of their out-of-pocket expenditures in acquiring their participation interests in the Loan Pools. (FAC, ¶ 27.) Accordingly, Plaintiffs' claim for damages for fraud should be dismissed because they received the entire principal amount of their investment, along with a return on that investment.

## B.    Plaintiffs' Tort Claims Sound In Fraud And Therefore They Cannot Seek Lost Profits or Expectancy Damages.

Plaintiffs have brought a series of tort claims that all sound in fraud, including breach of fiduciary duty (Count III), aiding and abetting (Count IV), and conversion (Count V). If Plaintiffs cannot seek these lost profit damages for fraud, then Plaintiffs cannot try to seek the very same damage by dreaming up additional, unnecessary tort claims that are merely window dressing to the fraud claim. *See First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 95 (S.D.N.Y. 1989), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ("New York law expressly prohibits

13

recovery of 'lost profits' in fraud actions, and plaintiff's RICO claims-which sound almost exclusively in fraud-cannot include a claim for 'lost profits.'") (citing *AFA Protective Systems, Inc. v. American Tel. & Tel. Co., Inc.*, 57 N.Y.2d 912, 442 N.E.2d 1268, 456 N.Y.S.2d 757 (N.Y. 1982)).

The tort claims in the Complaint all sound in fraud and are based on what Plaintiffs have labeled, the "unlawful scheme," "scheme to defraud," and "fraudulent redemptions." (FAC, ¶¶ 19-27, 70-71.) Plaintiffs' pre-motion response letter reinforces that their other tort claims all sound in fraud. In attempting to explain why their other tort claims were not barred by the respective statute of limitations, Plaintiffs argued that: "Plaintiffs also allege Defendants actions were based on fraud, which the Complaint and Attachment A set forth with proper specificity." (Isasi Decl. Ex. D at 3.) Finally, Plaintiffs' last paragraph in their letter could not be any clearer: "Plaintiffs' Complaint was timely filed and raises serious issues of fraud, misconduct and breach of contract by Defendants." (*Id.*)

Therefore, in addition to the fraud count (Count VI), Plaintiffs' other tort claims, including breach of fiduciary duty (Count III), aiding and abetting (Count IV), and conversion (Count V) fail because Plaintiffs cannot recover these losses as a matter of law.

## C.    Under New York Law, Lost Profits Are Unrecoverable Under The RICO, Breach Of Implied Covenant And Conversion Counts Pled By Plaintiffs.

Even if the Court were to find at this stage of the proceedings that Plaintiffs are permitted to pursue their lost profits and expectancy damages under certain Counts, they cannot, under specific binding precedent, recover the lost profit/expectancy damages in the claims for RICO (Count VIII), breach of the implied covenant of good faith and fair dealing (Count II), and conversion (Count V).

14

1.    RICO

Lost profits can only be recovered under RICO if Plaintiffs suffered out of pocket losses in the first instance to business or property. 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of section 1962 of this chapter may sue . . ."); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3292 (1985) ("[T]he plaintiff only has standing if, and can recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."); *see also Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)("RICO's use of the clause 'by reason of' has been held to limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or 'but for' cause."); *McLaughlin v. American Tobacco Co.*, 552 F.3d 215, 222 (2d Cir. 2008).

In *Commercial Union Assur. Co. plc v. Milken*, 17 F.3d 608 (2d Cir. 1994), *cert. denied*, 513 U.S. 873, 115 S. Ct. 198 (1994), the Second Circuit affirmed the district court's dismissal of a RICO claim by investors for their investments in a partnership that had suffered no out-of-pocket loss because, while the case was pending, they received back the full amount they spent to purchase the securities and also a "10.2% return on their capital" and noting that the investors received "114.6 percent of their initial capital investment and they still own their partnership interests." 17 F.3d 608, 611-13 (2d Cir. 1994). Although the investors got back their money, they still wanted treble damages and benefit of the bargain damages. The Second Circuit found that "damages as compensation under RICO § 1964(c) for injury to property must, under the familiar rule of law, place appellants in the same position they would have been in but for the illegal conduct." *Id.* at 612. Because the plaintiff investors were already placed in that position, "without provable damages, no viable RICO cause of action may be maintained." *Id.* As the

15

Second Circuit summarized: "Here plaintiffs, who are investors, may have feared they would suffer harm, but they actually suffered no out-of-pocket loss since their investments were fully repaid, plus interest. Thus, while we have no difficulty in finding that plaintiffs' causes of action might well subject defendants to liability, plaintiffs can prove no damages." *Id.* at 609.

Other cases have likewise held that benefit of the bargain damages are not recoverable under Section 1964(c). *See First Nationwide Bank*, 27 F.3d at 768 (adopting the rule for fraud damages that a "defrauded plaintiff may recover out-of-pocket losses caused by the fraud" in the context of "deciding whether a defrauded plaintiff has standing under RICO"); *Henkind v. Brauser*, No. 87 Civ. 4072, 1989 WL 54109, at *6 (S.D.N.Y. May 17, 1989) ("The lost benefit of the bargain, while arguably an ongoing injury, does not qualify as 'an injury resulting from a RICO violation.' This injury arises instead from defendants' alleged breaches of contract, which is not conduct alleged to constitute the RICO violation."); *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 CIV 1052, 1992 WL 73473, at *1 n.1 (S.D.N.Y. Apr. 1, 1992) (excluding as damages from common law fraud, securities fraud, and RICO causes of action any damages that "would grant plaintiffs a full 'benefit of the bargain' recovery" because that "would place plaintiffs in a better position than if the fraud had never occurred").

Plaintiffs have based their RICO claim on Defendants' alleged fraud, and just as the plaintiff in *Commercial Union Assur.*, Plaintiffs seek lost profits above the principal balance, or par value, of their participation interests in each of the Loan Pools. (FAC, ¶¶ 27, 70-72 and 75.) But, as addressed above with the fraud count, Plaintiffs did not suffer any out of pocket losses because Plaintiffs received the principal balance or par value of their investment in the Loan Pools. Therefore, without such losses, Plaintiffs lack standing to bring a RICO claim that they could not otherwise bring as a fraud claim.

16

2.    Breach of Implied Covenant

In addition, lost profit damages cannot rest upon an independent breach of the implied duty of good faith and fair dealing (Count II). If such damages exist, they are measured under breach of contract. *See Travellers Intern., A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1576-1577 (2d Cir. 1994) ("We adhere to the general proposition that a damage award for lost profits cannot rest upon the breach of the implied duty of good faith and fair dealing. Here, however, the implied duty was not invoked to create a new obligation, but to measure compliance with an explicit contract obligation.").

3.    Conversion

Under New York law, "the usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Agamede Ltd. v. Life Energy & Tech. Holdings, Inc.*, No. 04-CV-2985, 2007 WL 201167, at *3 (E.D.N.Y. Jan. 23, 2007) (citing *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 402 N.E.2d 122, 125, 425 N.Y.S.2d 783 (N.Y. 1980)); *PG 1044 Madison Assocs., LLC v. Sirene One, L.L.C.*, 369 F. Supp. 2d 512, 517 (S.D.N.Y. 2005) ("The appropriate measure of damages is the value of the property at the time and place that the conversion occurred."). New York courts, however, "have generally disallowed lost profits as a measure of damages in a conversion action on the grounds that such a basis for a damage award would be too speculative." *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, No. 88 CIV 6238, 1991 WL 95035, at *4 (S.D.N.Y. May 23, 1991); *Gerdes v. Reynolds*, 30 N.Y.S.2d 755, 765 (N.Y.Sup. 1941) ("Lost profits as a result of conversion have been disallowed."). As admitted by Plaintiffs, they received the principal amount of their investments and, therefore, there is no conversion claim for lost profits.

17

Therefore, at a minimum, Counts II, V, and VII must be dismissed because Plaintiffs cannot as a matter of law recover the damages they seek for lost profits under these Counts.

III.    **Plaintiffs' Causes Of Action Related To Breach Of Fiduciary Duty (Counts III & IV), Conversion And RICO Were Not Timely Brought And Are Barred By The Applicable Statutes of Limitations.**

The facts alleged in Plaintiffs' Complaint, even drawing all reasonable inferences in favor of Plaintiffs, clearly demonstrate as a matter of law that at least four of Plaintiffs' causes of action were filed beyond the applicable limitations period. These Counts include: Count III - Breach of Fiduciary Duty; Count IV - Aiding and Abetting Breach of Fiduciary Duty; Count V - Conversion; and Count VIII - RICO. All of these causes of action have a three year statute of limitation, except the RICO claim, which has a four year statute of limitation. However, because Plaintiffs' cause of action began to accrue, at the latest, in May of 2003, and because this action was not initiated until August 29, 2007, these counts should be dismissed as untimely.

As alleged in the Complaint, at or about the time Plaintiffs' participation interests in Loan Pools were effectively redeemed (beginning September 12, 2002 and ending May 27, 2003), Plaintiffs' investment advisors, Asset Allocation, conducted an investigation on Plaintiffs' behalf "to determine the reason for the early redemptions." (FAC at ¶ 25.) This investigation included responses by representatives of Greystone & Co. on May 16, 2003, inquiring as to the circumstances leading to the "early redemptions," just before to the redemption in the 1995-4 and 1996-6 Loan Pools. *Id.* There is no dispute as to the date when the alleged "early redemptions" took place (September of 2002 and May of 2003). There is also no dispute as to the date on which Plaintiffs, through their advisor, became aware of the "early redemptions" and investigated their cause -- no later than May of 2003. Plaintiffs filed their Notice and Summons in New York state court on August 29, 2007, more than four years after the date on which their

18

causes of action accrued. As such, Plaintiffs' breach of fiduciary conversion and RICO claims are untimely and must be dismissed.

In New York, there is a three-year statute of limitations for breach of fiduciary duty claims where monetary relief is sought. *See* N.Y. § CPLR 214 [4]; *Cooper v. Parsky,* 140 F.3d 433, 440-41 (2d Cir. 1998). A claim for aiding and abetting the breach of fiduciary duty possesses the same statute of limitations as the breach of fiduciary duty claim - three years. *See Bartang Bank & Trust Co. v. Caiola,* No. 04 CIV 2402, 2006 WL 2708453, at *5 (S.D. N.Y. September 18, 2006); *Meriden Intern. Bank Ltd. v. Government of the Republic of Liberia*, 23 F. Supp. 2d 439, 453 (S.D. N.Y. 1998).

Conversion claims are also subject to a three year statute of limitations. *See* N.Y. CPLR § 214[3]. "Conversion claims are governed by a three-year statute of limitations, running from the date of the actual conversion." *Meadowbrook - Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341, 365 (S.D. N.Y. 2004). According to the Complaint, the alleged "conversion," the redemption of the Plaintiffs' participation interests in the Loan Pools, with the concomitant deprivation of Plaintiffs' principal and interest payments, occurred for one Loan Pool in September 2002, and the other two Loan Pools in May 2003. There is no "discovery rule" that would toll the running of the statute of limitations, and Plaintiffs' conversion claim is time barred. *See D'Amico v. First Union Nat. Bank,* 285 A.D.2d 166, 728 N.Y.S.2d 146 (N.Y.A.D. 1st Dept. 2001).

Finally, Plaintiffs have also failed to meet the four year statute of limitations period for claims under RICO. *See Rotella v. Wood,* 528 U.S. 549, 552-54, 120 S.Ct. 1075 (2000) (civil RICO action must be commenced within four years of date when injury should, through exercise of reasonable diligence, have been discovered; rejecting the rule of discovery of the pattern of

19

racketeering as the accrual date). *See also Meadowbrook-Richman*, 325 F. Supp. 2d at 361-62

("a cause of action under RICO accrues when the Plaintiff suffers an injury, and the statute of

limitations begins to run when the Plaintiff discovers or should discover that injury"). According

to the Complaint, Plaintiffs were aware of the "early redemptions" at the time they took place.

There is no better evidence of this than the fact Plaintiffs themselves initiated an investigation to

determine the cause of these early redemptions.

While Plaintiffs have tried to "plead around" the statute of limitations by alleging that

"Physicians was unable and would have been unable to discover the fraud [the RICO predicate

acts alleged] until May 4, 2007, when it took the deposition of Barolak in related litigation,"

(FAC, ¶ 26.) This is a blatant case of bootstrapping. Plaintiffs have pled a legal conclusion (*i.e.*

that they could not have discovered Defendants' alleged wrongful conduct until the deposition of

Mr. Barolak) and now seek to rely upon that manufactured legal conclusion to defeat the statute

of limitations argument. These four claims were untimely filed and should be dismissed.

## IV.    All Of The Plaintiffs' Causes of Action Should Individually Be Dismissed Due To Specific Legal Defects.

In addition to the various legal deficiencies identified *supra*, that apply to multiple

Counts, each of the individual causes of action have legal defects specific to those theories that

mandate dismissal of individual Counts.

### A.    Breach of Contract

Plaintiffs' Complaint alleges breach of the three Servicing Agreements, and the same

breach for each of them. Plaintiffs allege that all the Defendants breached their duties under ¶18

of the Servicing Agreement. However, the Servicing Agreements at issue are only between GSC

and another entity, GFC. Greystone & Co. and the Individual Defendants are not parties to the

Servicing Agreements. A non-party to a contract cannot be held liable for breach of contract.

*See Black Car and Livery Ins., Inc. v. H&W Brokerage, Inc.,* 28 A.D.3d 595, 813 N.Y.S.2d 138, 751 (N.Y.A.D. 2 Dept. 2006). Further, New York law does not recognize a breach of contract cause of action against agents of GSC, or aiders and abettors of GSC, as pled in Count I. *See Novak v. Scarborough Alliance Corp.,* 481 F. Supp. 2d 289, 293 (S.D. N.Y. 2007) (holding that directors or officers of a corporation "[are] not liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken."); *see also Knect v. Nassau County Native Americans,* 41 A.D.3d 435, 837 N.Y.S.2d 717, 718 (N.Y.A.D. 2 Dept. 2007) (affirming summary judgment in a breach of contract action where an individual merely "signed agreements solely in his capacity as president of NCNA" and where the individual "did not personally contract to perform any act in his individual capacity."). Therefore, the Court should dismiss the breach of contract claim against all Defendants except GSC, the contracting party.

### B.    Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of implied covenant of good faith and fair dealing relates to the Servicing Agreements. Thus, a prerequisite to maintaining this cause of action is the existence of a valid contract between Plaintiffs and all the Defendants. As related above, Plaintiff cannot establish the existence of such a valid contract with all of the Defendants and therefore, this Count should be dismissed as to those Defendants who were not parties to the Servicing Agreements.

### C.    Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs' Complaint fails to pled any facts that show all, or any, of the Defendants owed a fiduciary duty to Plaintiffs. Thus, this cause of action should be dismissed. *See Boley v.*

21

*Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) ("to plead a cause of action alleging that defendants became fiduciaries, plaintiffs must allege some of the factors from which a court could conclude that such a relationship has been established. Plaintiffs' amended complaint merely alleges that '[a]s a consequence of undertaking to act as a dealer-manager, promoters, sellers, accountants and bankers regarding the offering . . ., defendants entered into a fiduciary relationship of trust and confidence with plaintiffs.' Such a conclusory allegation does not satisfy Rule 8.") (footnote and citation omitted).

Plaintiffs' Complaint fails to plead facts that give rise to an independent relationship between themselves and Greystone & Co. and the individual Defendants. Thus, this cause of action should be dismissed as to those Defendants. Additionally, the absence of a fiduciary relationship between Plaintiffs and all Defendants is further established by language from each of the Servicing Agreements (to which only GSC is a party), which state in part:

> 26. <u>Liability of Servicer</u>. The Servicer shall be liable to the Participants under this Agreement only to the extent of the obligations expressly imposed upon and undertaken by the Servicer pursuant to the provisions hereof . . .
>
> ***** 
>
> 27. <u>Relationship between Servicer and Participants</u>. Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto and the services of the servicer shall be rendered as a independent contractor and not as agent for the Participants.

(*See e.g.* Isasi Decl. at Ex. A, ¶¶ 26-27.) Because the contracts at issue expressly do not call for a fiduciary duty to "Participants" (such as Plaintiffs) or establish "a confidential or close relationship which warrants the imposition of such a duty," a breach of fiduciary duty claim against all of the Defendants should be dismissed. *Windows Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 CIV 1816, 92 CIV 5283, 1993 WL 312899, at *4 (S.D.N.Y. Aug. 12, 1993).

22

To state a cause of action for aiding and abetting a breach of fiduciary duty, "a plaintiff must plead a breach of fiduciary duty, that defendant knowingly induced or participated in the breach, and damages resulting there from." Moreover, "[a] person knowingly participates in a breach a fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." "Actual knowledge, as opposed to constructive knowledge, is required and plaintiff may not merely rely on conclusory and sparse alleges that the aider and abettor knew or should have know about the primary breach of fiduciary duty." *Bullmore v. Ernst & Young Cayman Islands,* 45 A.D.3d 461, 846 N.Y.S.2d 145, at \*2 (N.Y A.D 1st Dept. 2000). Therefore, in addition to the fact there is no valid fiduciary duty claim pled in Count III, Plaintiffs make the conclusory allegation that Greystone & Co. and the Individual Defendants "knowingly acted in concert with, induced and participated in, aided and abetted and/or substantially assisted [GSC's] breach of fiduciary duty." (FAC at ¶ 49.) There is no specific allegation about how each Defendant individually aided or abetted. These are precisely the kind of conclusory allegations disapproved of and cannot support this cause of action.

### D.    Conversion

Plaintiffs' conversion count simply seeks compensatory damages for amounts which Plaintiffs claim they are due under the Servicing Agreements. (FAC at ¶ 52.) These facts do not support a legally valid claim for conversion. To state a claim for conversion, a plaintiff must allege that he has '"an immediate superior right of possession <u>to a specific identifiable thing</u> and that a defendant with an intent to interfere with such ownership or possession exercised dominion or actually interfered with <u>the property</u> to the exclusion of or in defiance of the plaintiff's rights.'" *See Chang v. Gordon,* No. 96 CIV 0152, 1997 WL 563288, at \*9-10 (S.D. N.Y. Sept. 8, 1997) (finding that plaintiff's allegations failed to identify the specific assets and

23

operations that were converted and found such description too vague and indefinite to support a claim for conversion) (emphasis added). Plaintiffs have only alleged that they were entitled to receive money as a result of "unlawful redemption" by GSC, which was "aided and abetted" by the other Defendants. These vague and indefinite allegations do not support a claim for conversion. In particular, the allegations regarding how Greystone & Co. and the Individual Defendants engaged in conversion are wholly nonexistent and therefore should be dismissed.

    **E.**    **Fraud**

Under Fed. R. Civ. P. 9(b), claims for fraud must be pled with particularity. In order to satisfy this requirement, a complaint must "(1) specify the statements that the Plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, (4) explain why the statements were fraudulent . . . and 9(b) is not satisfied when the complaint vaguely attributes the alleged fraudulent statements to all 'defendants'". *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Plaintiffs will point to two "particulars" in their Complaint to support an argument that they satisfied Rule 9(b) particularity requirements. The first is found in paragraph 25 of the Complaint, which states ". . . in response to [Asset Allocations] inquiries, it was represented to [Asset Allocation] that the redemptions occurred because the underlying loans had prepaid in connection with a restructuring of the mortgage loans under HUD's Mark-to-Market Program. Richard Heyman, a representative of Greystone & Co., made these representations orally and by e-mail to [Asset Allocation] on or about May 16, 2003." (FAC, ¶ 25.) Absent from this paragraph is a description of why this alleged statement is false. Moreover, this cause of action is directed at all Defendants. However, Plaintiffs' Complaint indicates the statement was made by a representative of only one of the Defendants (Greystone & Co.) and the Complaint does not

allege how the "fraud" of an employee of one defendant can be attributed to the others, or how the other Defendants participated in this fraudulent statement.

The other "particular" that Plaintiffs will rely upon to support this cause of action is Exhibit A to the Complaint, a log that contains a series of entries for various documents transmitted by mail, facsimile, and e-mails. This Court should note that more than 50 of these entries involve communications authored by people or entities who are not defendants in this matter, and that none of the listed communications identifies an Individual Defendant as the author. Additionally, every one of the entries on Exhibit A fails to adequately support a claim for fraud for one simple reason: Plaintiffs fail to state how any of the specific entries on this log are fraudulent. Plaintiffs have simply tried to mask the absence of particulars by providing page after page of entries, all of which are missing the critical "particularity" necessary to support a fraud claim - what "fraud" is contained in each of the communications.

### F.    Constructive Trust

Plaintiffs seek a constructive trust for "[t]he funds obtained by Defendants from the redemption and/or resale of Physicians' loan participation interests. . ." (FAC, ¶ 65.) However, a constructive trust does not lie when there is a adequate legal remedy for money damages. *See Pena v. Guzman*, No. 03 CIV 5120, 2004 WL 253331, at *2-3 (S.D. N.Y. February 11, 2004). ("Courts adhere to the principle that a constructive trust should not be imposed unless 'it is demonstrated that legal remedy is inadequate,' and that a constructive trust is 'essential to prevent unjust enrichment.'") (citations omitted). As such, this claim must be dismissed.

### G.    RICO

To state a claim under 18 U.S.C. § 1962(c), the Plaintiffs must allege:

(1)    The existence of an "enterprise" affecting interstate commerce;

25

(2)    Defendants (as "persons" defined in 18 U.S.C. § 1961(3)) are employed by or associated with the enterprise;

(3)    Defendants participated, either directly or indirectly, in the conduct of the enterprise's affairs;

(4)    Defendants so participated through a "pattern" of racketeering activity that must include at least two racketeering acts; and

(5)    An injury to Plaintiffs' business or property resulted by reason of the violation of § 1962(c).

*See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). The Complaint fails to allege at least three of the necessary elements of a RICO claim: 1) the existence of a enterprise distinct from the Defendants themselves, (2) continuity plus relationship, and 3) a legally cognizable injury to Plaintiffs' business or property.[5] Even if Plaintiffs had properly alleged these three elements, the RICO claims should be dismissed because they fail to allege the predicate acts of fraud with the particularity required by Fed. R. Civ. P. 9(b).

In enacting RICO, Congress intended to bring about the "elimination of the infiltration of organized crime and racketeering into legitimate organizations." *See* S. REP. No. 617, 91st Cong., 1st Sess. 76 (1969). The statutory requirement of an "enterprise" separate from the "persons" who allegedly conduct racketeering activity through it reflects "Congress' apparent intent to target. . . the exploitation and appropriation of legitimate business by corrupt individuals." *See Yellow Bus Lines v. Drives, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139 (D.C. Cir. 1989), *cert. denied,* 501 U.S. 1222 (1991).

As a matter of law, a RICO enterprise cannot consist "merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." *Mayfield v. General Electric Capital Corp.*, No. 97 CIV 2786, 1999 WL 182586, *8 (S.D.N.Y.

---

[5] This deficiency (Plaintiffs lack of standing) was addressed above at Argument Section II. C. 1., page 15.

Mar. 31, 1999) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d

339, 344 (2d Cir. 1994)); *see also Friedlander v. Rhoades*, 962 F. Supp. 428, 431 (S.D.N.Y.

1997). This is exactly what Plaintiffs have done in this case. The Complaint alleges that the

Individual Defendants were "alter ego[s] . . . of each other and GSC and Greystone & Co."

Therefore, they cannot, as a matter of law, be "distinct" for RICO purposes. *Friedlander*, 962 F.

Supp. at 431. Even setting this aside, the only "enterprise" alleged is one consisting of a

corporation (Greystone & Co.) and its officers and employees (the Individual Defendants). This

is insufficient. As the Court stated in *Mayfield*, "[b]ecause Plaintiffs have alleged that the

enterprise consists of Defendant corporation and its agents carrying out its regular activities,

albeit in an illegitimate manner, Plaintiffs have failed to allege a RICO enterprise this is

sufficiently distinct from Defendant itself." *Mayfield* at *9; *see also Riverwoods Chappaqua

Corp.*, 30 F.3d at 344 ("Nevertheless, by alleging a RICO enterprise that consists merely of a

corporate defendant associated with its own employees or agents carrying on the regular affairs

of the defendant, the distinctness requirement may not be circumvented.").[6]

Plaintiffs attempt to allege both open and closed ended continuity. The Supreme Court

recognized both forms of continuity in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109

S.Ct. 2893 (1989). Open-ended continuity exists when 1) "a specific threat of repetition" exists;

2) "the predicates are a regular way of conducting [an] ongoing legitimate business"; or 3) "the

predicates can be attributed to a defendant operating as party of a long-term association that

---

[6] This distinctiveness requirement is what helps prevent exactly what Plaintiffs are attempting with their Complaint--the transformation of a business dispute into a racketeering claim. *See, e.g., Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) ("Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or of telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.' The courts have excluded this far-fetched possibility by, holding that an employer and its employees cannot constitute a RICO enterprise.")

exists for criminal purposes." *H.J. Inc.*, 492 U.S. at 242-43. The Complaint plainly does not satisfy the requirements of open-ended continuity, and indeed does not even attempt to meet categories 2 or 3 from *H.J. Inc.* recited above. The <u>sole</u> attempt to meet the open-ended continuity requirement is found in two phrases of one sentence in ¶ 72 of the Complaint: "The multiple acts of racketeering activity by the RICO Defendants were part of an <u>ongoing plan or scheme</u> to unlawfully redeem and convert the loan participation interests of Physicians and other investors in the subject Loan Pools <u>as well as other loan pools serviced by GSC</u>." (emphasis added). However, the Complaint is entirely devoid of any allegations regarding what other Loan Pools were serviced by GSC, who the other investors in the loans pools were, or how the RICO Defendants schemed to convert these hypothetical investors' participation interests.

The Complaint also fails to satisfy the closed-ended continuity requirement. The scheme described in the Complaint occurred when the RICO Defendants "unlawfully redeem[ed] and convert[ed] the loan participation interests" of the Plaintiffs. (FAC, ¶ 72.) The Complaint alleges that these redemptions took place over an eight-month period, from September 2002 to May 2003. This is clearly an insufficient amount of time under the Second Circuit's law (which has never been found in a time period of less than two years) to establish closed-ended continuity. The Second Circuit has held:

> "Since *H.J. Inc.*, in which the Supreme Court made clear that closed-ended continuity can only be shown though conduct occurring over "a substantial period of time" . . . we have found closed-ended continuity only twice. In *Jacobson v. Cooper*, 882 F.2d 717 (2d Cir. 1989), we concluded that predicate acts occurring over "a matter of years," from approximately 1980 to 1988, satisfied the continuity requirement. *Id.* at 720. Similarly, in *Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992) *cert. denied*, 508 U.S. 952, 113 S. Ct. 2445 (1993) we found erroneous a jury instruction that "a few weeks or months" might constitute "a substantial period of time," but upheld a RICO verdict in favor of plaintiff because the predicate acts in question spanned <u>at least two years</u>." *GICC Capital Corp. v. Technology Finance Group*, 67 F.3d 463, 466-67 (2d Cir. 1995) (emphasis added).

Thus, the RICO claims fail to demonstrate continuity.  Additionally, given the absence of specificity (and particularity) in Plaintiffs' Complaint, they have not demonstrated that the predicate acts of which Defendants are apparently accused "have the same or similar purposes results, participants, victims, or methods of commission . . " *H.J. Inc.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901.  Plaintiff's RICO conspiracy claim, §1962(d) fails because the underlying substantive RICO cause of action fails. *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 221 (S.D.N.Y. 2002) (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996), *cert. denied* 522 U.S. 809, 118 S.Ct. 49 (1997) (vacated on other grounds); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 658 (S.D.N.Y. 1996); *McCormack Intern. Corp. v. Vohra*, 858 F. Supp. 415, 423 (S.D.N.Y. 1994)).[7]

As discussed previously, the fraud allegations fail to meet Rule 9(b) particularity requirements. *See* Section IV. E. *supra* at *24*.  This is a fatal defect in the RICO context as well. Plaintiffs' allegations of mail and wire fraud that comprise the predicate acts also fail to meet the requirements of Rule 9(b). *See Friedlander*, 962 F. Supp. at 432 n.6 ("Allegations of predicate email and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and why they were fraudulent.") (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  Plaintiffs' attempts to plead the mail and wire fraud in ¶¶ 70 - 72 of the Complaint and further described in Exhibit A attached thereto are unavailing.  Plaintiffs fail to allege why any these communications were fraudulent.  For the alleged wire frauds, the notations in Exhibit A fail to establish even the basic fact that the

---

[7]  While the conspiracy claim is so vaguely pled a specific challenge to its legal sufficiency is impossible, it is certainly worth noting here the general rule -- applicable here -- that a corporation cannot conspire with its employees or agents when they act for the corporation.  16 Am.Jur.2d Conspiracy, § 56.  This is what Plaintiffs seem to allege in their Complaint.  (FAC, ¶ 20.)

communication was interstate.  The remaining allegations (¶¶ 73-75) are merely conclusory allegations and thus the cause of action should be dismissed.. *See Caytas v. Maruszak*, No. 06 CIV 985, 2007 WL 2456956, at *4 (S.D.N.Y. 2007) (finding that the complaint "merely recites statutory concepts and references, with no specific allegations concerning acts by any particular defendants that Plaintiff contends were violative of the underlying statutory prohibitions . . .").

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court enter an order which dismisses, with prejudice, Plaintiffs' First Amended Complaint and enters such other and further relief as this Court deems just and proper.

Date:  August 28, 2008

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  /s/ Stephen L  Saxl
Stephen L. Saxl (SS-1028)
William A. Wargo (WW-9417)
200 Park Avenue
New York, NY  10166
(212) 801-2100
(212) 801-6400 (fax)
saxls@gtlaw.com
wargow@gtlaw.com

and

José A. Isasi, II (*pro hac vice*)
77 West Wacker Drive
Suite 2500
Chicago, IL  60601
(312)456-8400
(312)456-8435 (fax)
isasij@gtlaw.com

*Attorneys for Defendants Greystone Servicing Corporation, Inc., Greystone & Co., Inc., Stephen Rosenberg, Robert R. Barolak and Curtis A. Pollock*

30